**Patrick D. ACKER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–696.**

District of Columbia Court of Appeals.

Submitted May 4, 1992.

Decided Dec. 30, 1992.

Walter S. Booth, Bethesda, MD, appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Kevin F. Flynn, and Kenneth F. Whitted, Asst. U.S. Attys., Washington, DC, were on the brief for appellee.

Before ROGERS, Chief Judge, and FARRELL, Associate Judge, and REILLY, Senior Judge.

REILLY, Senior Judge:

After a jury trial, Patrick D. Acker and two codefendants, Gerald A. Ford and Henry C. Addison, were convicted of robbery, an offense defined in D.C.Code § 22–2901 (1989 Repl.). All three noted an appeal. The appeals of the codefendants were consolidated for hearing before another division of this court, which affirmed their convictions on November 12, 1992, in an unpublished Memorandum Opinion and Judgment (Nos. 91–CF–636 and 91–CF–675).

In his separate appeal, Acker, who was a high school student at the time of the trial and sentenced to prison for an indefinite term pursuant to the Youth Rehabilitation Act, argues that the trial court erred in denying motions for acquittal made after the government had rested and renewed at the ·close of all testimony, because the evidence against him was insufficient to support a jury verdict of guilty either as a principal in the crime or as an aider and abettor. While the question is a close one, we agree with this contention and reverse.

The testimony pointing to Acker's guilty participation in the robbery rested entirely upon the testimony of the victim, Michael Grooms, a young man who had become an acquaintance of appellant during their junior high school days. He told the jury that late one afternoon while he was trying to place a call on an outdoor pay phone situated beside a liquor store, a car drove up and parked at the curb. The driver and one of the passengers went inside the store leaving Acker and his two codefendants on the sidewalk. Appellant greeted the complainant, who was wearing a gold chain for which he had paid $400.00 around his neck saying, "What's up Grooms. Look like

you're making some money." Acker then stepped back by the car.

According to Grooms, Addison suddenly came behind him, "popped" the chain from out of Grooms' shirt and pulled it up, saying he wanted to see if it was real. When Grooms attempted to retrieve the chain, Addison handed it to Ford, asking him if he thought it was real. Addison then instructed Ford to put the chain around Addison's neck, which he did. As Grooms again tried to recover his chain, Addison stuck a black object into Grooms' stomach and told him to go back to the phone. Grooms testified he did not know whether the object was a gun or not, adding:

> So at that point I just stepped back, and that's when I looked at Acker, and I said, "Are you going to let this happen?" And he was like just turned away like he have nothing to do with it.... At that point the driver and another passenger ... stepped out of the liquor store and went into the car. And then that's when Patrick [Acker] and the rest of them had got in the car and just drove off.

After calling three other witnesses—none of whom had been on the scene at the time of the incident Grooms described—the government rested. Appellant's motion for acquittal was denied and the trial proceeded.

On the stand in his own defense, Acker told the jury that there were only three passengers in the car on the afternoon of the incident, and that he was the individual who had entered the liquor store with the driver, Gerald Cole. He conceded that when he and his codefendants left the vehicle, he noticed Grooms, a former classmate, using a telephone. The two youths exchanged greetings for about three minutes before he and Cole went into the shop and purchased beer, having left Ford and Addison outside. When he and Cole emerged, Acker recalled that Grooms, who was still telephoning said something to him like "what's going on, are you going to let this happen to me?" Appellant did not reply as he professed ignorance of what Grooms was talking about. He asserted that Grooms never told him that he had

been robbed and that he had not seen anyone remove anything from the latter's possession.

Cole corroborated appellant's version of their encounter with Grooms on the sidewalk and their visit to the liquor store. The defense also recalled a government witness, Detective Combee, who testified in perusing the notes of his interview with Grooms that the complaining witness had told him that Acker had gone into the liquor shop and came back out. The officer was not cross-examined. Neither codefendant took the stand, but joined appellant in renewing motions for acquittal. These were denied without explanation.

In rejecting appellant Acker's first motion for acquittal, based on counsel's argument that all that the government had shown was that his client was at the scene, but had not presented evidence that he participated in the robbery the court remarked that the complainant "confronted your client with the very fact that he was being robbed and was Mr. Acker going to let it happen, and Mr. Acker simply turned his head away. He did nothing to interfere with it." The court then announced that "the jury could conclude that Mr. Acker was the setup man here because he knew the complainant. I think the evidence is clearly ample."

We find it difficult to reconcile the trial court's denial of the motion with decisions of this court holding that mere presence at the scene of a crime committed by someone else, even with knowledge that an offense has been committed is insufficient to sustain a conviction as an aider or abettor. *See, e.g., In re L.A.V.,* 578 A.2d 708 (D.C. 1990), where we set aside a conviction of the accused as an accomplice to the offense of carrying an unlicensed pistol, even though he had driven the principal offender to the place where they were arrested and was seen conferring with him just before the latter dropped the incriminating weapon, as the pair noticed police approaching them. *See also Dumas v. United States,* 483 A.2d 301 (D.C.1984), where police responding to a broadcast of an ongoing burglary found the defendant standing beside

the open door of a truck containing a gas stove stolen from the burgled premises. The suspect who was wearing gloves told the arresting officer that police would not find his fingerprints on anything. In reversing his conviction, we cited as controlling precedent such cases as *Quarles v. United States*, 308 A.2d 773, 774 (D.C. 1973), and *Corbin v. United States*, 237 A.2d 466, 467 (D.C.1968), and contrasted them with *Montgomery v. United States*, 384 A.2d 655, 660 (D.C.1978), where conviction as an aider and abettor to a shoplifting larceny was upheld because evidence that defendant kept gazing around the shop while his companion was reaching for and stowing away merchandise indicated that he was acting as a lookout.

On this record, we think it by no means clear beyond a reasonable doubt that appellant's greeting to a former school mate which on its face appeared to be a jovial quip was intended to set up Grooms as a target for robbery, even though appellant's codefendants might not have noticed the tempting necklace had not appellant's remark drawn attention to it. Granted that if Acker had indeed observed the robbery (as Grooms apparently assumed), he did nothing to frustrate it, but we know of no case—and the government cites none—which imposes a duty of rescue upon an inadvertent witness to a crime, particularly when one of the criminals was apparently carrying a handgun. Nor does the evidence here indicate that appellant facilitated the getaway of the culprits. The car they entered in departing the scene was possessed and driven by Cole, not Acker.

We recognize, of course, the well-established rule that when a conviction is challenged on the ground of insufficient evidence, the record must be viewed in the light most favorable to the evidence presented by the government; *e.g., Rose v. United States*, 535 A.2d 849, 850 (D.C. 1987). Nevertheless, we are unable to conclude that on the testimony against appellant Acker, a reasonable jury could find beyond a reasonable doubt that this partic-

ular defendant was guilty of robbery, either as a participant or an aider or abettor. Accordingly, the denial of the acquittal motion was error.[1]

*Reversed.*

---

1. Appellant also argues that the failure to file a pre-trial motion for severance shows ineffective representation by his defense counsel. In view of our disposition, we find it unnecessary to reach this contention.