**James W. KELLY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 93–CF–1022.**

District of Columbia Court of Appeals.

Argued Nov. 17, 1993.
Decided March 15, 1994.

---

Alan E. Untereiner, Washington, DC, appointed by this court, for appellant.

Roy W. McLeese, III, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, David Schertler, and Margaret R. Batten, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and GALLAGHER, Senior Judge.

ROGERS, Chief Judge:

In this expedited interlocutory appeal, appellant James W. Kelly contends that the Double Jeopardy Clause bars his retrial, after a remand based on reversible instructional errors, unless this court finds that the evidence at trial was sufficient to support his conviction of armed robbery. Appellant contends that he may not be retried because there was insufficient evidence that he knew the principal intended to commit the robbery, and that he knew or should have foreseen that a weapon would be involved. We hold that, in the absence of an express finding on evidentiary sufficiency by the court when it remanded the case for a retrial, the issue is properly before the court in the instant appeal. Upon viewing the evidence in the light most favorable to the government, as we must, we conclude that the evidence at appellant's first trial was sufficient to support his

conviction. Accordingly, there remains no double jeopardy bar to appellant's retrial and we remand the case to the trial court.

## I.

On February 21, 1991, appellant, who was indicted for first-degree murder while armed, felony murder, and armed robbery, was convicted by a jury of armed robbery and thereafter sentenced to fifteen years to life imprisonment. On appeal from his conviction, appellant raised four issues: (1) there was insufficient evidence that he acted with "guilty knowledge" that the principal, John Watson, was committing a robbery when appellant picked up Watson and James Jones and drove away; (2) there was insufficient evidence that appellant knew or should have foreseen that a gun would be required to commit the robbery; (3) the trial judge erred by refusing to instruct the jury that it had to find that appellant knew or should have foreseen that a weapon would be required; and (4) the trial judge erred by refusing to give a lesser-included offense instruction on unarmed robbery.

In response to appellant's brief, the government moved to vacate the judgment of conviction and to remand the case for a new trial, conceding the reversible instructional errors in light of *Ingram v. United States,* 592 A.2d 992 (D.C.), *cert. denied,* —— U.S. ——, 112 S.Ct. 667, 116 L.Ed.2d 757 (1991), which was decided shortly after appellant's trial. The government also argued that because the evidence was sufficient, a retrial was not barred by the Double Jeopardy Clause. Appellant filed a response agreeing that his conviction should be vacated but arguing that the evidence was insufficient and a judgment of acquittal was, therefore, required. A three-judge motions division granted the government's motion and remanded the case to the trial court.[1] A new trial date was set for September 13, 1993. Before the retrial commenced, appellant moved to dismiss the indictment on the ground that the retrial would violate the Double Jeopardy Clause of the Fifth Amendment. The motions judge denied the motion.[2]

## II.

■ It has long been established that when a defendant obtains a reversal of his or her conviction on the basis of evidentiary insufficiency, the Double Jeopardy Clause bars a retrial. *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). This is so because a reversal on the ground of insufficient evidence is the constitutional equivalent of an acquittal. *Id.*

■ Appellant maintains, contrary to the government's argument, and we agree, that this court did not previously decide the sufficiency issue at the time of the remand. Although evidentiary sufficiency was addressed in appellant's initial brief in his direct appeal and in the government's motion to vacate and remand, the motions division did not address the issue in its per curiam order.[3] Nor did the government request

---

1. The motion was originally granted in an order of February 19, 1993, signed by the Chief Judge. However, on April 21, 1993, the Chief Judge *sua sponte* vacated this order, and referred the motion and appellant's response to a motions division. *See* D.C.App.R. 27(c) (motions for procedural orders); Fed.R.App.P. 27(b); Advisory Committee Note to Rule 27(b) ("motions for procedural order" refers to "motions which do not substantially affect the rights of the parties or the ultimate disposition of the appeal"). By per curiam order of June 4, 1933, a three-judge motions panel granted the government's motion to vacate and remand the case for a new trial.

2. By memorandum order of August 11, 1993, the motions judge stated that "[r]egardless of the correct interpretation of the Court of Appeals' [remand] order, the government accurately states

that there is no mechanism by which this court can or should review [the first trial judge's] decision to deny defendant's motions for judgment of acquittal." The motions judge suggested, in view of the fact that the government's motion to remand was made more than three and one-half years after appellant's arrest, that the "most plausible explanation" for the motions division's failure to address appellant's sufficiency claim in its June 4, 1993, order was that the court was saving the issue for a time after it was certain the government would initiate a retrial. In his brief, appellant states that he was sixty-two years old and had already served five years in prison for these charges.

3. The per curiam order stated in substantive part:

that the motions division do so. The government's argument that the motions division implicitly made such a finding is contrary to the established manner in which the court addresses contentions that are put before it. When the court addresses a sufficiency claim, it does so explicitly.[4] *See, e.g., Lyons v. United States,* 606 A.2d 1354, 1361 & n. 16 (D.C.1992); *Kind v. United States,* 529 A.2d 294, 296 n. 6, 302 (D.C.1987) (per curiam), *rev'd on other grounds, White v. United States,* 613 A.2d 869 (D.C.1992) (en banc); *Butler v. United States,* 481 A.2d 431, 442 (D.C.1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985). That another court has taken a different view, *see United States v. Bizzard,* 674 F.2d 1382, 1386 (11th Cir.1982), is, of course, not dispositive, particularly in light of the fact that the Eleventh Circuit went on to decide the sufficiency question for itself. For the reasons noted by the motions judge, *see supra* note 2, in the instant case the motions division may have concluded that there was no need for it to decide evidentiary sufficiency until it was clear that the government intended to proceed with a new trial.[5] It would generally be preferable, for reasons of judicial economy, for the court to address the sufficiency of the evidence before remanding the case for a new trial. Nonetheless, as the government acknowledged at oral argument, the court has jurisdiction to decide the sufficiency issue in the instant appeal. *Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); *Green v. United States,* 584 A.2d 599, 601 (D.C.1991); *see Lyons, supra,* 606 A.2d at 1361 n. 16 ("[w]e are obliged to address [appellant's] sufficiency argument because, if the evidence were insufficient, the Double Jeopardy Clause would bar her retrial") (citing *Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984), and *Burks, supra,* 437 U.S. at 18, 98 S.Ct. at 2150).

### III.

▮ Turning to the merits, appellant makes two claims of evidentiary insufficiency: first, that there was insufficient evidence that appellant acted with "guilty knowledge" that the principal, John Watson, was committing a robbery when appellant picked up Watson and James Jones and drove away; and second, that there was insufficient evidence that appellant knew or should have foreseen that a gun would be required to commit the robbery. We find neither contention persuasive and hold that the evidence at appellant's first trial was sufficient to support his conviction of armed robbery.[6]

▮ In reviewing for sufficiency of the evidence, the court must examine the evidence in the light most favorable to the government and inquire whether a reasonable person could find guilt beyond a reason-

---

On consideration of the motion of appellee to vacate judgment of conviction and remand the case for a new trial, the response thereto, the motion of appellant to expedite this appeal, and appellant's second motion to expedite this appeal, it is

ORDERED that the motion of appellee to vacate judgment of conviction and remand this case for a new trial is granted. It is

FURTHER ORDERED that the motion of appellant to expedite this appeal is denied as moot. It is

FURTHER ORDERED that the second motion of appellant to expedite this appeal is denied as moot.

4. Moreover, in view of the important objective of the prohibition against successive trials embodied in the Double Jeopardy Clause, *see, Burks, supra,* 437 U.S. at 11, 98 S.Ct. at 2147, appellant persuasively suggests that:

it is improbable at best that this [c]ourt would have rejected [appellant's] insufficiency arguments . . . without even mentioning them.

Equally remote is the possibility that this [c]ourt would have resolved these critical issues without the benefit of full briefing and oral argument.

Not only did the government not file a brief on the issue in the first appeal, the court, acting as a summary motions panel, never heard oral argument. *See United States v. Palzer,* 745 F.2d 1350, 1352 n. 2 (11th Cir.1984).

5. For similar reasons, we reject the government's argument that appellant must be deemed to have waived the issue by not seeking rehearing in this court of the motions division's order remanding the case.

6. In view of our conclusion, we need not decide whether appellant's failure to renew his motion for a judgment of acquittal at the close of all the evidence waived his right to obtain appellate review of the evidentiary sufficiency at his first trial. *Turney v. United States,* 626 A.2d 872, 878 (D.C.1993).

able doubt. *See, Parker v. United States,* 601 A.2d 45, 51 (D.C.1991). To withstand a motion for judgment of acquittal the evidence need only permit a reasonable jury to find guilt beyond a reasonable doubt, it need not compel such a finding. *Taylor v. United States,* 601 A.2d 1060, 1062 (D.C.1991) (citations omitted). Thus, to prove that appellant aided and abetted the armed robbery of the decedent, the government was required to establish beyond a reasonable doubt that an armed robbery had been committed and that appellant knowingly participated in the robbery. *Prophet v. United States,* 602 A.2d 1087, 1092 (D.C.1992); D.C.Code § 22–105 (1989). Viewing the evidence in the light most favorable to the government, we conclude that a jury could reasonably find that appellant knowingly participated and assisted in the robbery.

The facts, briefly stated, are as follows. The decedent worked at a grocery and liquor store at 2155 Pennsylvania Avenue, N.W. that was owned by her husband. On Thursdays and Fridays, the decedent regularly brought large amounts of cash to the store in a brown handbag for the store's check-cashing service. All of the employees at the store knew about this practice, and one of the store's cashiers, who was friendly with appellant and his friend, Ms. Bailey, talked about this practice with Ms. Bailey.

On the day of the armed robbery, the decedent arrived at the store around 10:20 a.m., parking her car in a nearby parking lot on Pennsylvania Avenue that stretches through to K Street. Shortly thereafter, two delivery men saw the decedent in the parking lot struggling with a large man who had a gun. Both delivery men heard a shot, which directed their attention to the struggle, and then saw the man fire a second shot at the decedent. A third witness heard two shots, saw two men walking speedily through the parking lot toward K Street, and then saw a white General Motors four-door sedan come around the corner onto K Street and pick up the two men who were described as "fleeing the scene." The car headed east toward 21st Street and then turned right, heading south. At the time, one of the men (later identified as Watson) was carrying a large brown purse and stopped before getting into the car to look around and to put something in his belt.

A fourth witness had seen a white car parked on K Street and noticed the driver, whom he later identified as appellant. The witness heard a woman scream that someone had been shot and ten seconds later saw two men wearing trenchcoats "fast walking" through the parking lot, who then got into the white car. The witness followed the white car in his own car, and noted the license plate number and the fact that the second man (Jones) lay down in the backseat.

On the morning of the armed robbery, appellant picked up Jones at a friend's house at around 9 a.m. Jones put two guns inside his suit before going out to meet appellant. When Jones returned to his friend's house around 11:20 a.m., slightly over two hours after appellant had picked him up, he threw bundles of money on the bed. Appellant arrived at Ms. Bailey's house soon after, around 11:30 a.m.

From this evidence, a jury could reasonably find, as the government argues in its brief, that "the robbery was timed to coincide exactly with [the dedecent's] arrival in the parking lot on a . . . 'big day' for check-cashing . . . [when she would be carrying] a large amount of cash." While there was no direct evidence that the store's cashier had told appellant about the check-cashing practice, there was evidence that she had spoken of it with Ms. Bailey, that the cashier often socialized with appellant and Ms. Bailey, and that both appellant and Ms. Bailey had visited the cashier at the grocery store. Hence, the jury could reasonably infer that appellant knew about the check-cashing practice. The evidence also showed that appellant, Watson and Jones were close friends who were often together prior to the robbery, affording many opportunities for appellant to share any information about the store's check-cashing practices, as well as opportunities to plan the robbery.

Appellant's argument that he was simply an innocent dupe who had driven some friends around as a favor is unpersuasive. Appellant's pre-robbery contact with the store's cashier and Watson and Jones estab-

lished how appellant could have obtained information about the check-cashing practices and shared it with Watson and Jones. Appellant's actions on the day of the robbery also belie the suggestion that he was unaware of what was going on: he picked up Watson and Jones as they fled through the parking lot, when others in the area heard the shots, the decedent's screams, and a woman's scream that someone had been shot. When appellant picked up Jones and Watson, Watson was carrying a large brown handbag and stopped to put something in his waistband and to look back over his shoulder, while Jones lay down in the back of the car.

Appellant's post-robbery conduct and statements also supported a reasonable inference that he had a role in the robbery. After the robbery, the three men were seen huddled together, whispering in an agitated manner about something. During that conversation, appellant was heard to say that the police had been to his house. Some time later appellant was heard to say "why did [Watson] have to shoot her" and "he shouldn't have done it." Appellant also told a friend that he was going to have to turn himself in because of something having to do with his car. A jury could reasonably conclude that these statements were inconsistent with innocence; appellant expressed concern that Watson had shot the decedent, but no surprise about the robbery or the fact that Watson had had a gun. Moreover, an innocent person would not likely talk about "turning himself in" to the police. In addition, once appellant knew that his car had been identified, appellant lied to the police, claiming that he did not have possession of his car at the time of the robbery. *See Mills v. United States,* 599 A.2d 775, 783–84 (D.C.

1991) (false exculpatory statement after crime may give rise to inference of guilt).

Thus, the jury could reasonably have found that appellant had participated in planning the robbery, driven his friends across town to the robbery site, waited for them while they robbed the decedent, and then picked them up after the crime. This evidence was sufficient to support the conviction of appellant as an aider and abettor of the robbery. *See Taylor, supra,* 601 A.2d at 1063; *Dew v. United States,* 558 A.2d 1112, 1118–19 (D.C. 1989); *In re A.B.H.,* 343 A.2d 573, 575 (D.C. 1975) (sufficient evidence of aiding and abetting where defendant had a close association with co-respondent prior to and after the purse snatching, defendant was present very near the scene of the crime, and fled from the scene with the co-respondent); *see also McMillan v. United States,* 373 A.2d 912, 913 (D.C.1977) (sufficient evidence of aiding robbery where defendant drove the car in which purse snatcher fled and did not stop in response to victim's cries).[7]

Finally, we are satisfied that there was sufficient evidence "to support a reasonable inference that the accomplice was aware the crime would be committed 'while armed.'" *Ingram, supra,* 592 A.2d at 1003 n. 15 (quoting *Hordge v. United States,* 545 A.2d 1249, 1256 (D.C.1988)). While issues relating to the degree of knowledge required to prove culpability can be complex, *see id.,* we need not resolve them here. On this record, we find unpersuasive appellant's contention that the jury would have engaged in impermissible speculation to find that appellant knew or reasonably should have foreseen that a gun would be involved in the robbery. *See Taylor, supra,* 601 A.2d at 1062. Even assuming, as appellant suggests, that purse snatch-

7. In view of the evidence that appellant had inside information and arranged to drive Watson and Jones to a particular grocery store on a heavy check-cashing day at the exact time when the decedent would arrive with large amounts of cash, appellant's reliance on *Clark v. United States,* 418 A.2d 1059 (D.C.1980) (sidewalk robbery by co-defendant, who ran through alley into defendant's car; defendant drove at normal speed for one block and stopped car once police emergency lights activated), is misplaced. For similar reasons, appellant has misplaced reliance on *Jones v. United States,* 625 A.2d 281 (D.C. 1993) (fact that defendant brushed by the com-

plainant shortly before co-defendant stabbed complainant, then walked away with co-defendant "laughing and talking" insufficient to prove aiding and abetting), *Acker v. United States,* 618 A.2d 688 (D.C.1992) ("jovial quip" to school friend before robbery and failure to prevent robbery of friend insufficient to prove aiding where defendant also failed to facilitate getaway of those actively engaged in the robbery), and *Bailey v. United States,* 135 U.S.App.D.C. 95, 416 F.2d 1110 (1969) (absence of evidence that defendant's presence designed to sanction or promote robbery; mere presence, slight prior association, and subsequent flight insufficient).

ings are frequently accomplished without the use of weapons, this was not an ordinary, spur-of-the-moment purse snatching.

The evidence showed that the decedent was known to carry extremely large amounts of cash in connection with a commercial business, and thus she might reasonably be expected to have taken precautions against theft. Furthermore, others connected with the check-cashing operation of the store might reasonably have been thought to have taken precautionary measures to ensure the decedent's safe arrival inside of the store when she was carrying so much cash. Consequently, the robbers, in order to ensure that they would be able to seize the purse successfully and quickly, would be likely to arm themselves. The evidence that the robbery was planned to coincide precisely with the day and time that the decedent would be carrying a lot of cash reinforced the reasonable inference that appellant knew Watson or Jones would have a gun when they robbed the decedent. In addition, from the evidence that before the robbery Jones entered appellant's car with two guns, and that Watson used a fairly large gun in the robbery, the jury could reasonably have found that it was unlikely the weapons would have been concealed from appellant during the two hours that the three men were together that morning.[8] *See Hordge, supra,* 545 A.2d at 1256 (jury could reasonably find that it was unlikely that defendant would keep gun in his waistband for entire two hours that he and co-defendant were together).

Accordingly, we affirm the order denying appellant's motion to dismiss the indictment on the ground of double jeopardy and remand the case to the trial court for trial.

---

**8.** The government's evidence indicated that the gun used to shoot the decedent was a .44 calibre revolver, a powerful and fairly large handgun.