852 A.2d 44 (2004)
Raynard VAAS, Appellant,
v.
UNITED STATES, Appellee.
No. 01-CM-1556.
District of Columbia Court of Appeals.
Argued April 20, 2004.
Decided June 3, 2004.
*45 Eugene K. Ohm, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.
Leah L. Belaire, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.
Before SCHWELB, RUIZ, and WASHINGTON, Associate Judges.
WASHINGTON, Associate Judge:
Appellant Raynard Vaas ("Vaas") was convicted of criminal contempt[1] for violating the stay-away condition of his pre-trial release. On appeal, Vaas contends that the evidence was insufficient to support his conviction. Specifically, Vaas argues that the order was ambiguous because it failed to clearly define the area from which he was ordered to stay away, and thus, he could not have willingly violated the order. We do not have to decide whether the terms of the stay-away order rendered it facially invalid, however, because we conclude that the stay-away order as orally modified in this case failed to meet the specificity requirement set forth in D.C.Code § 23-1322(f) (2001). Consequently, we reverse Vaas' conviction.

I.
On August 15, 2001, Vaas was charged with one count of attempted tampering with evidence.[2] At an initial hearing in the case, the court allowed Vaas to be released on personal recognizance before trial. As a condition of his release, the court ordered Vaas to stay away from a three-block radius of the residence at which he was arrested, 1127 Montello Avenue, Northeast, Washington, D.C. When Vaas informed the court that he lived three blocks away from 1127 Montello Avenue, the court modified the order to a one-block radius. The court orally warned Vaas that if "you're found within a one-block area of that location, you can get locked up for just being there" (emphasis added). The written order the court issued, however, stated that "You are to stay away from the following place(s) or area(s): 1127 Montello Avenue N.W. WDC; 1 block Radius"[3] (emphasis added). There was no map or other visual aid attached to the stay-away order.
On August 26, 2001, Metropolitan Police Officer James Ritter witnessed Vaas driving his vehicle southbound on Florida Avenue, Northeast, about 30 to 40 yards away from Florida Avenue's intersection with the 1100 block of Montello Avenue.[4] At the time that Officer Ritter spotted Vaas, he was conducting a traffic stop near the intersection on the 1200 block of Florida Avenue. According to a map admitted as evidence at trial, Officer Ritter indicated that 1127 Montello Avenue was located approximately in the middle of the 1100 block of Montello Avenue. A fair reading of the map also suggests that the location where Officer Ritter saw Vaas was around the corner and across the street[5] from the *46 southern end of the 1100 block of Montello Avenue.[6] Officer Ritter, believing Vaas was in violation of his stay-away order, arrested Vaas, who was subsequently charged with criminal contempt.[7]
At trial, the court found Vaas not guilty of attempted tampering with evidence. Regarding the contempt charge, Vaas argued that the stay-away order was ambiguous because "one block radius" failed to put him on adequate notice of the prohibited geographical area. The court, however, stated that "a radius has a very specific definition. I mean, it is one block to the North, South, East and West. I mean, because a radius covers the circumference of the area. And, so, I mean, that is the kind of plain meaning of that term."
The trial court thereafter found beyond a reasonable doubt that Vaas violated his stay away order because he came within a one-block radius of 1127 Montello Avenue on August 26. After convicting Vaas of contempt, the trial court sentenced him to incarceration for six months but suspended execution in favor of two years probation. Vaas appeals this conviction.

II.

A. Standard of Review
In reviewing whether there was sufficient evidence to support a conviction, we view the evidence in the "light most favorable to the prosecution to determine whether a reasonable factfinder could find guilt beyond a reasonable doubt." Lewis v. United States, 767 A.2d 219, 222 (D.C. 2001) (citing Kelly v. United States, 639 A.2d 86, 89-90 (D.C.1994)). We defer to the factfinder to determine credibility, weigh the evidence, and draw reasonable inferences. See Abdulshakur v. District of Columbia, 589 A.2d 1258, 1263 (D.C.1991). "Moreover, in reviewing bench trials, this court will not reverse unless an appellant has established that the trial court's findings are plainly wrong or without evidence to support [them]." Mihas v. United States, 618 A.2d 197, 200 (D.C.1992) (internal citations and quotation marks omitted). Whether a defendant's acts constitute the crime of contempt, however, is a legal issue which we review independently. See Brooks v. United States, 686 A.2d 214, 219 (D.C.1996).
"In order to convict an individual for criminal contempt it is necessary to find beyond a reasonable doubt that the individual committed a volitional act that constitutes contempt." In re Ryan, 823 A.2d 509, 511 (D.C.2003) (quoting Smith v. United States, 677 A.2d 1022, 1030 (D.C. 1996)). The elements of criminal contempt are: 1) willful disobedience 2) of a court order 3) that causes an obstruction of the orderly administration of justice. Id. at 512 n. 3 (quoting Swisher v. United States, 572 A.2d 85, 89 (D.C.1990) (per curiam)).
D.C.Code § 23-1322(f) (2001) mandates that a release order shall "[i]nclude a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct." We have held that a defendant cannot be convicted of criminal contempt where he or she is not put on notice of the specific conditions of the stay away order. See *47 Smith, 677 A.2d at 1031 (holding that, where stay-away order stated that defendant could not contact her former friend, the order did not support a criminal contempt conviction based on the defendant contacting that friend's attorney).

B. Discussion
Vaas argues that the stay away order "cannot be the basis for a criminal contempt conviction" because the order failed to specify sufficiently the "area of prohibited conduct." He contends that the language of "one-block radius" is ambiguous because a "block" is not a unit of measurement that is uniform in all directions from the center of the circle (the center here being 1127 Montello Avenue). Furthermore, Vaas argues that the trial court failed to provide any guidance on how to measure the distance. Pointing out that the order could potentially have several meanings, Vaas asks in his principal brief whether a one-block radius would mean that he was to stay away from the end of the 1100 block of Montello Avenue in all directions, or whether the radius would extend beyond the end of the 1100 block.
The government argues that the common sense or plain meaning of the order "is anything but ambiguous." In attempting to define the area from which Vaas was ordered to stay away, the government contends that "the common sense meaning and understanding of the area covered by a `one-block radius' of '1127 Montello Avenue' would be the area from 1127 Montello Avenue to the corresponding address on all of the surrounding blocks." Because the terms "radius" and "block" have ordinary and specific meanings, the government argued, the order in this case could only have one possible common sense meaning. Even if this court found the order to be ambiguous, the government contends that there was no evidence indicating that Vaas was confused in any way by the meaning of the order.[8]
Although the parties have debated whether the order is facially valid, we need not decide whether the term "one-block radius" is ambiguous because we are convinced that the court's subsequent explanatory statement created the kind of ambiguity that caused the stay-away order to fail to meet the specificity requirement set forth in § 23-1322(f). In this case, the court's written order stated that Vaas was to stay away from "1127 Montello Avenue N.E. WDC; 1 block radius" (emphasis added). At the same time the court issued its written order, however, the court orally warned Vaas to stay away from "a one block area" of 1127 Montello Avenue. Because a "one-block radius" and a "one-block area" are susceptible to very different meanings, the court's written order and its oral pronouncement created an ambiguity regarding the exact area from which Vaas was barred. Thus, we cannot say that the order set forth "all the conditions to which the release [was] subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct." D.C.Code § 23-1322(f) (2001). Because we find that the order as explained by the court fails to meet the specificity standard of § 23-1322(f), the trial court could not find beyond a reasonable doubt that Vaas' conduct in this case was willful.
Although this opinion does not address the specific issue Vaas raised in this case  whether a stay-away order prohibiting the defendant from entering a radius measured in blocks is facially inadequate *48 to satisfy the specificity requirement set forth in § 23-1322(f)  the question of what constitutes a "one-block radius" generated a spirited discussion among the parties and the court at oral argument. For this reason, we strongly suggest that in future orders trial courts endeavor to set more defined parameters, using maps, if practicable, that can be attached to the stay-away orders to provide defendants with clear guidance about this important aspect of a release order. This is particularly important in cases such as this one where the defendant lives in the immediate neighborhood of the location from which he is barred.
For the foregoing reasons, we reverse Vaas' conviction for criminal contempt based on a violation of his stay away order.
So ordered.
SCHWELB, Associate Judge, concurring:
I concur in the court's reversal of Vaas' criminal contempt conviction, and I am in substantial agreement with the majority opinion. On the merits, I add only that, early in the case, the trial judge expressed befuddlement regarding the meaning of "one-block radius":
What it says here is Montello Avenue and Florida Avenue. Which, you know, I mean, that's his specific location. And, a one block radius. And, so, a one block radius would be what off Montello? Would be what? ... What is a one block radius? ... I mean, you know, I guess I'm not real clear.
....
He's told to stay off that particular locale where he was arrested and I'm all right with that. But, I don't know  what is a one block radius? What does that mean from Montello Avenue? ... Yeah, I don't know what that means.
Vaas was thus found guilty of criminal contempt for violating an order which, at least initially, even the judge did not understand. Moreover, as Judge Washington points out for the court, the issue was further clouded when the judge told Vaas that he could be locked up if he was found within a one-block area (not radius) of 1127 Montello Avenue. To sustain a conviction on these facts, we would have to reach out to find justification for doing so. This is not our task, especially in a criminal case.
Near the conclusion of the majority opinion, the court suggests that future stay-away orders should "set more defined parameters, using maps if practicable." I cannot disagree with this suggestion whenever a stay-away order is issued,[9] but I have some question whether, all things considered, such orders are always worth the candle.
More than twenty-two years ago, a judge of the Superior Court[10] was called upon to decide, in a solicitation for prostitution case, whether he should order, as a condition of release, that the defendant, one Nicole Bernard, be required to stay away during the night-time hours from certain areas of our city in which prostitution was said to be rampant.[11] Ms. Bernard's attorney argued, inter alia, that such an order would be "akin to exile," *49 "contrary to Magna Carta (1215)," and would infringe upon the fundamental right to travel. The court rejected these contentions, and concluded that a trial judge has the authority, once probable cause has been shown, to condition the defendant's release on compliance with an area stay-away order. See United States v. Bernard, 109 DAILY WASH. L. RPTR. 2213 (Super.Ct.D.C.1981) (Bernard I); United States v. Bernard, 109 DAILY WASH. L. RPTR. 2629 (Super.Ct.D.C.1981) (Bernard II).
Nevertheless, the judge decided, in the exercise of his discretion, not to enter the requested order. In Bernard I, he did so on the following ground:
It is evident that, in barring the defendant from an area of the city, the Court would be prohibiting conduct that is otherwise perfectly lawful. The release form which the defendant signed advised her in block capitals that "YOU ARE NOT TO COMMIT ANY CRIMINAL OFFENSE." If the defendant came to the prohibited area and solicited a policeman or somebody else to engage in sex for pay, she would not only be committing a crime, but would also be violating the conditions of her release and subjecting herself to the various sanctions specified in [D.C.Code] § 23-1329(a) [1981]. Accordingly, the practical effect of a stay-away order would be to make the defendant amenable to punishment for going to the area in question during the night time hours without engaging in unlawful activity (e.g. by going to a restaurant, a bar, or a movie).
109 DAILY WASH. L. RPTR. at 2220. (Emphasis in original.)
In Bernard II, the court elaborated as follows:
If, on the other hand, Ms. Bernard came to the interdicted area to take her mother to a movie, there would be no discernible harm to the community and, in the Court's view, no realistic prospect of detection. As the Court stated in In re White, [158 Cal.Rptr. 562, 566, 97 Cal.App.3d 141 (Cal.Ct.App.1979)]
[t]here are simply innumerable situations in which a probationer could be in the map area which are unrelated to prostitution. The condition relates to conduct which is not criminal. Many perfectly legal activities are covered by this condition which have no relationship whatsoever to soliciting (cf. People v. Arvanites (1971) 17 Cal.App.3d 1052, 1063, 95 Cal.Rptr. 493, striking as too broad a prohibition on picketing and related activities). City buses, the Greyhound Bus and taxicabs pass through the various map areas. Technically, being engaged in a passive activity such as being a mere passenger in public transportation or private transportation would be a violation of the condition.[12] In some regards the condition may be related to future criminal conduct. However, the condition is too broad in proscribing every type of activity. Keeping White out of the map area will have a minimal effect on future criminal conduct except possibly in that particular area. As previously noted, there was prosecution testimony in the superior court hearing that this type of probation condition only moves solicit[o]rs to other areas of Fresno. Unlike conditions proscribing hitchhiking or the frequenting *50 of specific places (such as bars, pool rooms, etc.), this condition is simply too broad. There is little factual nexus between the proscribed activity and future criminality.
The combination of these two truths  no discernible harm to the community and unlikely detection  led this Court to exercise its discretion in favor of freedom of movement. It is also appropriate to observe that, unlike the defendant in In re White, Ms. Bernard has not yet been tried on the pending charge and is entitled to a presumption of innocence. Accordingly, the considerations articulated in the above quotation from In re White apply to her a fortiori.

109 DAILY WASH. L. RPTR. at 2633-34.
Bernard I and Bernard II were decided a long time ago, but I hold the same opinion today as I held then in my capacity as a judge of the Superior Court. I recognize that not all stay-away orders are the same; a stay-away order from a victim of a violent act differs materially from the situation in Bernard, and the reasoning of Bernard would not logically apply. The stay-away order in the present case is likewise far less restrictive than the one the court declined to impose in Bernard. Since the court suggests means by which stay-away orders can be improved, however, I think it appropriate to add that it is not necessarily wise to grant routinely every prosecution request for a stay-away order as a condition of release. In my opinion, a judge would do well to assess the pros and cons of any such proposed order before signing it.
NOTES
[1] In violation of D.C.Code § 23-1329 (2001).
[2] In violation of D.C.Code § 22-723 (2001).
[3] Although the August 15, 2001 order was not included in the official record on appeal, we rely on the order included in appellant's brief, to which no objection was made by the government.
[4] We note for the record that Florida Avenue was the only major through street serving the impacted area.
[5] Because he was driving southbound on Florida Avenue, Vaas was across the street and, thus, farther away from 1127 Montello Avenue than if he had been driving north-bound.
[6] The record is unclear on whether Vaas drove through the intersection of Florida and Montello Avenues.
[7] At trial, Officer Ritter testified that he believed Vaas was to stay away from a three-block radius of the Montello Avenue address. The court still found, however, that the point at which the officer saw Vaas was within a one-block radius of 1127 Montello Avenue.
[8] The government relies here on evidence that Vaas signed the order and orally affirmed his understanding of the order.
[9] I note from personal experience, however, that there are unfortunately quite a few criminal defendants in our nation's capital who would be unable to read a map.
[10] The judge was the author of this concurring opinion.
[11] In an earlier case, Ms. Bernard had been ordered to stay away, between 9 p.m. and 4 a.m., from the area of northwest Washington bordered by T Street in the north, 7th Street in the east, New York Avenue in the south, and 16th Street in the west.
[12] In the present case, Vaas was driving his car down a main thoroughfare, and this constituted his only criminal contempt.