Terrance CROSSLAND, Appellant,

v.

UNITED STATES, Appellee.

No. 10–CM–1234.

District of Columbia Court of Appeals.

Submitted Nov. 10, 2011.

Decided Dec. 15, 2011.

---

Regina Michaels, appointed by the court, was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III and Kathleen A. Connolly, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

THOMPSON, Associate Judge:

After a bench trial, appellant Terrance Crossland was found guilty of two counts of assault on a police officer ("APO"), in violation of D.C.Code § 22–405(b) (2001). On appeal, he challenges the sufficiency of the evidence. He also asserts that the trial court erred in denying his post-trial motion for a judgment of acquittal, which he sought as a sanction against the government for the police officers' violation of his Fourth Amendment rights. We affirm.

## I.

The government presented evidence that on the evening of April 24, 2010, Metropolitan Police Department ("MPD") Officers Brandon Baldwin and Kim McCue were engaged in an "aggressive high visibility patrol" in the area of Third and Bryant Streets, N.E. The officers, who were in full uniform, stopped appellant and his cousin Joseph Womack, both of whom were standing near the corner, as part of their effort to gather information about a rash of recent shootings and drug sales in the area. Officer Baldwin acknowledged that neither man was "doing anything unlawful" when the officers stopped them. The officers instructed both men to place their hands on a nearby fence for a weapons pat-down. Appellant "initially" com-

plied, but quickly became "agitated," telling Officer Baldwin words to the effect of "Fuck this shit. I'm tired of this." Appellant then "delivered [an] elbow strike" to the officer's head. Next, appellant "got into a fighting stance," holding both fists in front of his face, and attempted to "deliver another strike with his fist," but Officer Baldwin "deflected th[e] blow" and hit appellant. Officer McCue jumped on appellant's back and delivered a "couple of knee strikes" to "take [appellant] to the ground." As appellant struggled with Officer McCue, Officer Baldwin sprayed appellant's face with pepper spray. The officers then attempted to handcuff appellant as he lay on his stomach on the ground. After they put handcuffs on one of his hands, appellant flailed the handcuffed arm about while tightening the muscles in his other arm to keep the officers from removing it from underneath his body. Officer Daniel Castan arrived after one of the other officers signaled for assistance. Over his radio, Officer Castan had been able to hear Officer Baldwin saying, "Stop resisting, stop resisting." With Officer Castan's help, the three officers eventually were able to place appellant in handcuffs.

Appellant testified that he did not elbow or try to hit Officer Baldwin. Rather, appellant testified, the officer tried to throw him to the ground and then punched him in the eye when, instead of immediately sitting down as the officer instructed him to do after the pat-down, appellant asked whether he could pull up his pants. Appellant claimed that he was already sitting down when the officer "maced" him, and that thereafter he held his arms "straight out," allowing the officers to handcuff him. The defense also called several other witnesses who claimed to have

seen the officer hit appellant without provocation or described appellant's reputation for peacefulness.

The trial court found that appellant was guilty of APO against Officer Baldwin in that he elbowed the officer in the head, punched at the officer, and resisted the officer's efforts to arrest him. The court found appellant guilty of APO as to Officer McCue "based on his ... resisting her attempts to put him under arrest." The court specifically credited Officer Baldwin's testimony, noting that it was corroborated by the testimony of Officer Castan. The court explained that it did not credit appellant's testimony or that of the witnesses he called because "[a]lmost all of them had a bias" and because it was "not credible ... that the police were out that day, randomly beating people up for no reason" and that even if they were doing that, it made no sense "that they would beat up [appellant], as opposed to Mr. Wo[ ]mack, whom they had a history with" and had arrested the week before. The court agreed that "the police did not have any right to go up and start searching" appellant and Womack when "they were not doing anything wrong or illegal at that point," but cited the law in this jurisdiction that "even if the police are wrongfully searching you or arresting you, the subject does not have the right ... to respond by physically resisting or assaulting the police."

## II.

Appellant argues that the evidence was not sufficient to establish that he "purposefully hit the officer with his elbow rather than through accident or mistake."[1] He also contends that the evidence did not support his APO convictions

1. In assessing evidentiary insufficiency, we "view the evidence in the light most favorable to the government, giving full play to the right of the [trial judge] to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *E.g., Ball v. United States,* 26 A.3d 764, 768 (D.C.2011) (citation and inter-

because he was entitled to defend himself against the officers' use of excessive force. As the trial judge recognized, however, this case "really ... c[a]me down to a question of credibility" of the witnesses, and the trial court's credibility determinations are "well nigh unassailable." *McCraney v. United States*, 983 A.2d 1041, 1061 (D.C.2009). The trial court specifically credited Officer Baldwin's testimony, which was to the effect that appellant "delivered the elbow strike" and attempted to hit the officer while in a "fighting stance" (*i.e.*, that appellant's assaultive conduct toward the officer was intentional); that appellant did so without the officer having used any force against appellant; and that Officer McCue jumped on appellant's back and struck his knees only after appellant had attempted to hit Officer Baldwin. The court also credited Officer Baldwin's testimony that appellant resisted Officer Baldwin's and Officer McCue's efforts to handcuff him.[2] As appellant has not "established that the trial court's findings are plainly wrong or without evidence to support them," *Vaas v. United States*, 852 A.2d 44, 46 (D.C.2004) (citation and internal quotation marks omitted), we are satisfied that the evidence was sufficient to permit the trial court to find beyond a reasonable doubt that appellant was guilty of APO as to each of the officers.

### III.

▇▇▇ In his post-trial Motion for Judgment of Acquittal, appellant argued that

"because Officer Baldwin's behavior violated his [Fourth Amendment] rights," the trial court "should consider sanctioning the Government" by entering a judgment of acquittal. Relying on *Mapp v. Ohio*,[3] appellant argues that the trial court erred in denying his motion, contending that "the only way to deter the MPD police policy of 'aggressive high visibility patrol,' ... is to remove the incentive" for police officers to disregard constitutional rights. We discern no reason to doubt (and the government does not dispute) that Officer Baldwin's conduct—forcibly searching appellant when, as the officer acknowledged, appellant was doing nothing unlawful—violated appellant's Fourth Amendment right to be free from unreasonable searches and seizures. However, application of the sanction established by *Mapp* (the so-called "exclusionary rule") has "been limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of police misconduct." *Artis v. United States*, 802 A.2d 959, 967 (D.C.2002) (quoting *United States v. Leon*, 468 U.S. 897, 910, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). This case did not involve the seizure of evidence, and the authority that appellant cited did not require or authorize the trial court to grant appellant's request for a judgment of acquittal. Moreover, as the trial court recognized, the APO statute "prohibits forceful resistance even if the officer's conduct is unlawful." *Dolson v. United States*, 948

---

nal quotation marks omitted). "To prevail, appellant must show that the government presented no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Watson v. United States*, 979 A.2d 1254, 1256 (D.C.2009) (citations and internal quotation marks omitted).

**2.** Contrary to appellant's suggestion, nothing in the court's findings suggests that the court deemed appellant's having put his hands up to his eyes in reaction to the pepper spray to

be the action by which appellant resisted arrest. The court relied instead on the testimony that appellant "struggl[ed] on the ground" and "ke[pt] one hand under his body" as the officers tried to get him in handcuffs.

**3.** 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) ("'[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.'").

A.2d 1193, 1202 (D.C.2008) (explaining that the rationale for this rule is to "deescalate the potential for violence which exists whenever a police officer encounters an individual in the line of duty") (citations and internal quotation marks omitted). The trial court did not err in denying appellant's motion.

Wherefore, the judgment of the trial court is

*Affirmed.*

SCHWELB, Senior Judge, concurring:

I join the judgment and opinion of the court. In my view, however, the patently unconstitutional conduct of the police in this case merits some brief additional comment.

In finding Crossland guilty of the two charges, Judge Pan added a few sentences that bear repeating here:

> I will agree with the defense ... and I think it's uncontested that the defendant and Mr. Wo[ ]mack were not doing anything wrong or illegal at that point [when the police approached them]. And I'll even agree with the defense that the police did not have any right to go up and start searching them, which is pretty much what they did. They went up and seized them, told them to turn around, and started patting them down. And I wish those officers were in the courtroom today, because there's a clear violation of the defendant's constitutional rights. Like[,] they were not allowed to do that, and I hope that the prosecutor will convey to them that that is the case. That just because it's a high crime neighborhood, or they're on some kind of a patrol, they're not allowed to go and just search people with no reason at all. So I will agree that that was uncalled for, and that was wrong.

These words needed to be said, and I hope that they have been or will be heeded, not just by the trial prosecutor to whom they were addressed, but also by her superiors in the United States Attorney's office and by the appropriate police authorities.

In her well-crafted and in some respects highly persuasive brief on appeal, Crossland's attorney effectively described the consequences of the disregard by the police of the constitutional rights of the citizen. The passage from the brief reproduced below has been slightly edited by me, primarily to exclude contentions which are incompatible with the judge's finding that Crossland elbowed and fought with the officer, but as so edited it has the ring of truth:

> What is most disturbing about this case is the result: a young man in the community ... who was engaged in peaceful activities (mowing the lawn, smoking a cigarette) and who the police knew at the time they stopped him was not doing anything unlawful, is approached by aggressive officers engaged in aggressive unconstitutional patrols, and this young man ends up being punched in the face with such force that he receives a black eye, kicked numerous times in the back, thrown on the ground, sprayed in the eyes with pepper spray, and finally, he receives two convictions on his record for assault on a police officer.... But for this unconstitutional police policy, appellant Crossland would not have suffered a physical attack on his person and would not have had these convictions on his record. Instead, he would have had a rather ordinary day in his community mowing the lawn and smoking a cigarette, a day he probably wouldn't even have cause to remember, and it is very disturbing that the police in this case are essentially being rewarded for their unconstitutional behavior and aggressive unconstitutional police policy which was the direct cause of a highly volatile situation which led to this young man's eventual convictions for assaulting them.

As Judge Thompson points out in her opinion for the court, we are of course bound by the trial judge's credibility findings,[1] and I fully agree that Crossland's convictions must be affirmed. But if anything good is to come from this unfortunate street encounter between the police and a citizen, it should be an end to the unconstitutional police conduct revealed beyond peradventure by this record. If this hope is naive and unrealistic, then to that extent we are less the land of the free than we would otherwise be.

1. I do think that one comment on the trial court's finding is appropriate. The judge credited the officer over the defense witnesses, in substantial part, because she thought it illogical that the police would beat up Crossland for nothing when they did not harm his cousin Womack, with whom they had recently had trouble. It is not inconceivable, however, that Crossland could have been summarily punished because he was disrespectful to the officers by raising his voice and yelling. "Fuck this shit! I'm tired of this." There is no evidence that Womack acted in a comparably defiant manner. The existence of the theoretical possibility that Crossland was treated as he was for "mouthing off," however, does not render invalid the judge's finding that Crossland elbowed and fought Officer Baldwin.