*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-386

ROBIN BOWLES, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(DVM-2719-13)

(Hon. Todd E. Edelman, Trial Judge)

(Argued February 26, 2015                    Decided April 23, 2015)

*Sean R. Day* for appellant.

*J. Matt Williams*, Assistant United States Attorney, argued for appellee. *Ronald C. Machen Jr.*, United States Attorney at the time of argument, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Adrienne Dawn Gurley*, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and BELSON, *Senior Judge*.

BELSON, *Senior Judge*:    Appellant Robin Bowles appeals his three convictions for assault on a police officer (D.C. Code § 22-405) (2012 Repl.) ("APO") and his single conviction for attempted second-degree cruelty to children (D.C. Code § 22-1101 (b) (2012 Repl.)).  He asserts that his three APO convictions

violate the Double Jeopardy Clause of the Fifth Amendment, since they should constitute only a single crime, and that the evidence is insufficient to support his convictions for assault on Officer Woody, and attempted second-degree cruelty to children. We hold that since Mr. Bowles committed multiple assaultive acts against each of the three police officers, his three APO convictions do not violate the Double Jeopardy Clause, and that the evidence is sufficient to support all four of his convictions. Accordingly, we affirm.

## I.

On November 27, 2013, Officers Wallace and Crowley arrived at a residence in response to a report of domestic assault. After knocking on the door and getting no response, they were turning to leave when appellant Robin Bowles arrived, carrying his approximately one-year-old son. Mr. Bowles started to go into the house and close the door, but a police officer held on to the handle of the door and prevented it from closing. The officers asked to speak with Mr. Bowles and told him he could not walk away. Mr. Bowles then walked past the officers, intentionally bumping both of them in a "fairly hard" manner. Both officers then grabbed Mr. Bowles, encouraging him not to resist and to put the baby down. The

trial court found that Mr. Bowles was swinging the baby "from [Mr. Bowles'] knee to over his head as if in a catapult." A cousin came up and accepted the baby from Mr. Bowles, who then fought with the two officers as they attempted to arrest him. Officer Woody arrived on the scene as Officers Wallace and Crowley were struggling with Mr. Bowles on the ground. Officer Woody had leg irons and helped to place Mr. Bowles in handcuffs and leg restraints while Mr. Bowles continued to kick, elbow, and even bite Officer Crowley, as Mr. Bowles continued to resist arrest.

Mr. Bowles was convicted of three counts of assault on a police officer and one count of attempted second-degree cruelty to children. He was given concurrent sentences of 120 days on the APO convictions, all of which were suspended except as to 45 days on each count. For the attempted second-degree cruelty conviction, he was given a consecutive sentence of 180 days, suspended except as to 45 days, resulting in a total sentence of 90 days of incarceration.[1] This appeal followed.

---

[1] Mr. Bowles was also placed on probation for one year, and required to pay a $50 fine per conviction under the Victims of Violent Crime Compensation Act.

4

## II.

Mr. Bowles' position is that only one of his three APO convictions can stand, since "[t]he Double Jeopardy Clause of the Fifth Amendment . . . protects the defendant against multiple punishments for the same offense." *Brannon v. United States*, 43 A.3d 936, 938 (D.C. 2012) (internal quotation marks omitted). He argues that, although convictions generally do not merge if there are multiple victims, the APO statute[2] is different "because its purpose is to serve public order and the administration of justice, and only serves to protect officers as incidental to its primary purpose." Relying upon the Supreme Court's decision in *Ladner v. United States*, 358 U.S. 169, 177 (1958), interpreting the nearly identical federal statute, he draws our attention to the Court's statement that "an interpretation that

---

[2] D.C. Code § 22-405 (b) (2012 Repl.) ("Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned not more than 180 days or fined not more than the amount set forth in § 22-3571.01, or both.").

there are as many assaults committed as there are officers affected would produce incongruous results."[3]

*Ladner* dealt with a single discharge of a shotgun that resulted in the injury of two officers. *Id.* at 171. The Court observed that the statute "may as reasonably be read to mean that the single discharge of the shotgun would constitute an 'assault' without regard to the number of federal officers affected, as it may be read to mean that as many 'assaults' would be committed as there were officers affected," and thus that the "policy of lenity" required it to "hold that the single discharge of a shotgun alleged by the petitioner in this case would constitute only a single violation." *Id.* at 177-78. However, the Court also remanded the case after noting that "[i]n view of the trial judge's recollection that 'more than one shot was fired into the car in which the officers were riding . . .' we cannot say that it is impossible that petitioner was properly convicted of more than one offense, even under the principles which govern here." *Id.* at 178 n.6.

---

[3] Although we distinguish *Ladner* on other grounds, we also note that in a subsequent case the Supreme Court stated that "we think it plain that Congress intended [the federal APO statute] to protect both federal officers and federal functions." *United States v. Feola*, 420 U.S. 671, 679 (1975).

The *Ladner* holding was expressly predicated on the claim that the defendant had committed only a single act—one discharge of a firearm that injured two officers.[4] In fact, when the *Ladner* record was re-constructed, Ladner's co-defendant—who had likewise been convicted of two assaults—was denied relief on a challenge to his being found guilty of two assaults because "as many as five shots were fired by the defendants" and therefore "ample evidence was presented . . . that two offenses were actually committed." *Cameron v. United States*, 320 F.2d 16, 18 (5th Cir. 1963).

"[O]ffenses do not merge where they arise out of separate acts or transactions." *Reeves v. United States*, 902 A.2d 88, 89 (D.C. 2006) (internal quotation marks omitted). "[E]ven when an interval of time between two acts is quite brief, successive punishments remain appropriate if the defendant [] reached a fork in the road or [] acted in response to a fresh impulse while proceeding in the criminal behavior." *Brannon*, 43 A.3d at 938 (internal quotation marks omitted).

---

[4] *Ladner*, 358 U.S. at 179 ("Because the proceedings at the petitioner's trial were not transcribed it will be necessary at the hearing on the motion to reconstruct the trial record. We decide only the issue tendered by the parties and intimate no view as to whether the petitioner may be entitled to correction of the consecutive sentence under any different fact situation which the reconstructed trial record may disclose.").

As a general matter, crimes do not merge when they are committed against separate victims. *See, e.g.*, *Hanna v. United States*, 666 A.2d 845, 855 (D.C. 1995).

Thus, when the evidence shows that separate acts of assault, resistance or interference occurred with respect to distinct officers, separate APO offenses have occurred. In *Brannon*, 43 A.3d at 939, the defendant "twice swung at Officer Jackson," and then "at least five minutes" later "kick[ed] Officer Thurman while resisting the officers' efforts to place him inside the transport." He thus "formed a fresh impulse to engage in a separate APO offense . . . perpetrated against a different victim," and we concluded that "because appellant's [two] APO convictions were premised upon distinct criminal conduct, they do not merge."[5] *Id.*

---

[5] We note that in *Crossland v. United States*, 32 A.3d 1005, 1007 (D.C. 2011), which dealt with the sufficiency of the evidence rather than merger, we upheld appellant's two APO convictions when the appellant had "elbowed [one] officer in the head" and "punched at [him]" and then resisted a second officer's immediate efforts to arrest by "struggl[ing]" with the officer, and "flail[ing] [a] handcuffed arm about while tightening the muscles in his other arm to keep the officers from removing it from underneath his body."

In *United States v. Lewis*, the U.S. Court of Appeals for the D.C. Circuit upheld consecutive sentencing on convictions for assaults on officers with a deadly weapon where the defendant had fired one shot at two officers while he was coming down the stairs to the first floor hallway of an apartment unit, and then fired a second shot from a second floor window at a third officer who was outside the building. 435 F.2d 417, 419-20 (D.C. Cir. 1970) (binding on this court under *M. A. P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971)) (remanding Lewis's two convictions for the first shot fired at two officers on the first floor for resentencing, based on *Ladner*'s holding that a single shot constitutes a "single act of assault"). In *United States v. Wesley*, 798 F.2d 1155, 1156-57 (8th Cir. 1986), the Eighth Circuit affirmed two assault convictions—rejecting an argument that the defendant was "engaged in a constant struggle which can only be characterized as a single act"—where, in a struggle involving multiple guards, the defendant "struck the first guard in the groin and moments later the second was injured on the corner of the bed."[6] The court reasoned that "the test for determining whether an indictment

---

[6] Similarly, in *United States v. Kazenbach*, 824 F.2d 649, 650 (8th Cir. 1987), the Eighth Circuit affirmed three assault convictions where the defendant in "[a] scuffle with three corrections officers, . . . swung at Officer Burton with a clenched fist, attempted to bite the officers, bit Officer Siemiatkowski on the hand, scratched Officer Small, and spat at all three officers."

is multiplicious[7] is whether each count requires proof of an additional *fact* which the other does not . . . [or] whether there is *more than one act* causing injury, not whether more than one officer is injured by the same act." *Id*. The court analogized the case to *United States v. Hodges*, 436 F.2d 676 (10th Cir. 1971) (where a defendant separately hit and kicked five prison guards), but distinguished *United States v. Theriault*, 531 F.2d 281, 285 (5th Cir. 1976) (where a prisoner injured two officers by the single act of striking the steering wheel of their vehicle). *Wesley*, 798 F.2d at 1156-57 (emphasis added).

Mr. Bowles cannot distinguish his case from these precedents. The trial court found that he separately assaulted, resisted, and interfered with all three officers. The evidence showed that he intentionally bumped into Officer Crowley and Officer Wallace, then swung at and later bit Officer Crowley, throwing elbows and kicking at both officers as they sought to arrest him. The evidence also showed that when Officer Woody arrived and observed the ongoing struggle, and attempted to aid in placing Mr. Bowles in handcuffs and leg irons, Mr. Bowles continued to throw elbows, kick at, and attempt to head-butt the officers, including

---

[7] Our jurisdiction appears to prefer to spell the word "multiplicitous," at least in the criminal context. *See, e.g.*, *Dunham v. District of Columbia*, 442 A.2d 121, 124 (D.C. 1982).

kicking free of the leg restraints that Officer Woody brought to the scene. Even before Officer Woody arrived on the scene, Mr. Bowles had already committed distinct acts of assault and resistance against Officers Crowley and Wallace sufficient to sustain two APO convictions.[8] Mr. Bowles' continued resistance and assaultive behavior after Officer Woody arrived at the scene is sufficient to sustain a third conviction for APO against Officer Woody. To be clear, we point out that application of the foregoing analysis would not support multiple convictions of Mr. Bowles for APO if the assaultive acts had all been committed against a single officer.

Similarly, Mr. Bowles' sufficiency challenge to his conviction for attempted second-degree cruelty to children lacks merit. We "will not reverse a conviction for insufficient evidence unless appellant establishes that the trial court's factual findings were 'plainly wrong' or 'without evidence to support them.'" *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006) (brackets omitted). Here, the trial court had ample evidence to support its conclusion that Mr. Bowles "create[d] a

---

[8] Although Mr. Bowles argues that he bumped into both Officer Crowley and Officer Wallace in a single action, that does not alter our conclusion that separate convictions are warranted. The bumping incident constituted an APO at least upon Officer Wallace, and Mr. Bowles later committed separate assaultive acts directed against Officer Crowley and Officer Woody.

grave risk of bodily harm" to the very young child, and "act[ed] recklessly in disregarding that grave risk." *See Jones v. United States*, 67 A.3d 547, 550 (D.C. 2013) (upholding a conviction in similar circumstances, and noting that "a showing of intent to harm the child is not required").

For the foregoing reasons, Mr. Bowles' convictions are

*Affirmed.*