Tyrone M. HECTOR, Appellant,

v.

UNITED STATES, Appellee.

Nos. 01–CM–1362, 03–CO–1502.

District of Columbia Court of Appeals.

Argued Jan. 13, 2005.
Decided Sept. 22, 2005.

Enid Hinkes, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the briefs were filed, John R. Fisher, Elizabeth Trosman and James S. Sweeney, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge,[1] RUIZ, Associate Judge, and STEADMAN, Senior Judge.

WASHINGTON, Chief Judge:

Appellant, Tyrone M. Hector, ("Hector") appeals from his conviction of five counts of criminal contempt for violating a civil protection order ("CPO"), in violation of D.C.Code §§ 16–1004, –1005 (2001). Hector argues for reversal on the ground that there was insufficient evidence to establish that he willfully violated the CPO. Specifically, Hector argues that Judge Milliken should have granted his motion for judgment of acquittal because the government failed to establish that he willfully violated the CPO due to the fact that there was no evidence that he ever had notice of the order. Because there is insufficient evidence that Hector was on notice of the restrictions contained in the CPO, we reverse.[2]

## I.

On April 1, 2001, Hector was charged with five counts of violation of a CPO. The information alleged that Hector violated a CPO issued on January 3, 2001 [3] by contacting the complainant, Denise Downing ("Downing"), once by telephone and in writing on four separate occasions. At trial, however, the government proceeded to argue five charges of violating the CPO based solely on five separate written contacts, and no telephonic ones.[4]

During a bench trial, Downing testified that Judge Blackburne–Rigsby signed an order requiring Hector to stay away from Downing and her two children. The government maintained that Judge Blackburne–Rigsby's no contact order was clear and meant that Hector was not supposed

---

1. At the time this case was argued Judge Washington was an Associate Judge on the court. His official term as Chief Judge began on August 6, 2005.

2. Hector also alleges that his convictions should be reversed on the grounds that the Intra-family Act is unconstitutionally vague and is void for overbreadth; and the motions court erred in denying his claim of ineffective assistance of counsel. Because we are reversing Hector's conviction, we need not reach these issues.

3. The CPO indicated that Hector was not supposed to contact Downing in any manner, including by writing to her, but the box indicating that Hector was served with a copy of the order in open court was unchecked. Hector's signature was also absent from the document.

4. Hector contends that the trial court's findings cannot be sustained because he was convicted of five counts of violating the CPO based on written contacts when he was only charged by information with four such counts. As stated, we find that Hector had insufficient notice of the CPO prohibition on writing to Downing since appellant admitted he knew of some of the CPO's restrictions (*i.e.*, physical contact); therefore we do not address whether the trial court's findings unlawfully exceeded the charges in the information.

to contact Downing in any manner, including in writing. In his defense, Hector testified that while he was in court the day that Judge Blackburne–Rigsby granted Downing's request for a CPO, he heard her say that he was to have "no contact" with Downing, and he understood that to mean "[n]o contact, physically."

At the conclusion of all the evidence, Judge Milliken found that the government had proven beyond a reasonable doubt that Hector willfully violated the CPO issued by Judge Blackburne–Rigsby when he wrote letters to Downing on several occasions. After convicting Hector on all five counts of contempt based on prohibited written communications, the trial court sentenced him to 180 days incarceration on each count, with the sentences to run consecutively. Hector appeals from this judgment.

## II.

### A. Standard of Review

■■■ When reviewing a trial court's findings of a CPO violation, we will reverse only if an appellant establishes that those findings were "without evidentiary support or plainly wrong." *Ba v. United States,* 809 A.2d 1178, 1182 (D.C.2002) (citations and internal quotation marks omitted). On appeal, "[w]e must view the evidence in the light most favorable to sustaining the judgment." *Id.* (citations and internal quotation marks omitted). "The proof of guilt is sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Davis v. United States,* 834 A.2d 861, 866 (D.C.2003) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Review of the sufficiency of the evidence, however, is not "toothless." *Id.* (quoting *Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc)). Finally, "[w]hether a defendant's acts constitute the crime of contempt, however, is a legal issue which we review independently." *Vaas v. United States,* 852 A.2d 44, 46 (D.C.2004) (citing *Brooks v. United States,* 686 A.2d 214, 219 (D.C. 1996)).

### B. Elements of the Offense

■■■ In a prosecution for criminal contempt, the government must prove beyond a reasonable doubt that the defendant willfully disobeyed a court order "that caused an obstruction of the orderly administration of justice." *Id.; see also Ba, supra,* 809 A.2d at 1183. "'The offense requires both a contemptuous act and a wrongful state of mind.'" *Davis, supra,* 834 A.2d at 866 (quoting *Swisher v. United States,* 572 A.2d 85, 89 (D.C.1990) (per curiam) (citations omitted)). "[A] defendant cannot be convicted of criminal contempt where he or she is not put on notice of the specific conditions of the [CPO] order." *Vaas, supra,* 852 A.2d at 46 (citing *Smith v. United States,* 677 A.2d 1022, 1031 (D.C.1996)).

### C. Discussion

In this case, Hector argues that there was insufficient evidence to convict him of contempt because Judge Blackburne–Rigsby never made it clear that he was prohibited from contacting Downing in writing, and that he never received a copy of the CPO that apparently prohibited him from doing so. At the close of the government's case, the trial court denied Hector's motion for judgment of acquittal. The trial court's denial, however, appears to have been predicated on its misrecollection of Downing's testimony. Specifically, the trial court incorrectly believed Downing had testified that when issuing the CPO, Judge Blackburne–Rigsby "specifically articulated ... the content[s] of the civil protection

order ... in the presence of the defendant" and had consequently put Hector on notice of the restrictions contained in the CPO. Thus, although the court found that the government did not prove beyond a reasonable doubt that Hector actually received a copy of the order, it still found that Hector was put on notice of the specific conditions of the CPO based on what it believed to be Downing's testimony and Hector's admission that he was present at the hearing. Contrary to the trial court's recollection of Downing's testimony "that the CPO was explained [to Hector] in detail," the record indicates that Downing merely testified that Hector and his lawyers were present at the time Judge Blackburne–Rigsby granted her request for a CPO.[5] Downing never testified that Judge Blackburne–Rigsby fully explained the contents of the CPO to Hector in open court. Without such evidence or some other indication that Hector was aware of the terms of the CPO, the government failed to establish that Hector willfully violated the CPO. *See Davis, supra*, 834 A.2d at 867.

■ We addressed a similar circumstance in *Davis*, where we reversed appellant's conviction because the government did not prove beyond a reasonable doubt that appellant willfully violated a CPO. *See id.* at 867. In that case, the appellant was ordered to complete a domestic violence counseling program. The evidence showed that he missed three classes before the date he allegedly violated the CPO by not attending the program. Testimony from the government's first witness established that four absences were required for removal from the program. According to the government's second witness, however, three absences were enough to have appel-

lant removed from the program. The government's second witness did not testify, however, that she explained these rules to Davis and the record did not reflect that she had any personal contact with him, unlike the first witness. *See id.* at 863–64. Thus, we concluded that there was no evidence that the attendance requirement testified to by the second witness was ever communicated to the appellant. We held that no impartial trier of fact could find beyond a reasonable doubt that appellant knew or understood, or should have known or understood, that his attendance responsibilities were as stated by the second witness. *Id.* at 868. Similarly, in this case, while the government proved that Hector violated the CPO by writing Downing, it did not prove that he did so willfully because it failed to introduce any evidence upon which a fact finder could find beyond a reasonable doubt that Hector was aware of the specific prohibitions contained in the CPO. *See Vaas, supra*, 852 A.2d at 46; *see also Davis, supra*, 834 A.2d at 868. Although Hector admitted that he was told not to contact Downing and her children, he testified that he believed that no contact meant no physical contact. Without some evidence that Hector was on notice that he was not supposed to contact Downing in writing, the government failed to prove that when he did so Hector engaged in a contemptuous act with a wrongful state of mind when he wrote Downing on five separate occasions. *See Davis, supra*, 834 A.2d at 866. Therefore, after reviewing the evidence in a light most favorable to the government, we find there was insufficient evidence to convict Hector of criminal contempt. *See Ba, supra*, 809 A.2d at 1183; *see also Davis, supra*, 834 A.2d at 866.

---

5. Contrary to Downing's statement, appellant testified that he was not represented by counsel when Judge Blackburne–Rigsby issued the

CPO. There is nothing in the record to confirm or rebut this assertion.

■ At oral argument, the government contended that the trial court, by discrediting Hector's testimony that he did not receive a copy of the CPO, would have been able to infer that Hector was aware of the prohibitions contained in the CPO and that such an inference was sufficient to satisfy the requirement that the government prove willfulness.[6] We disagree. This argument appears to be based on dicta from our decision in *Earle v. United States*, 612 A.2d 1258, 1266, 1268 (D.C. 1992). While this court suggested in *Earle* that, under certain circumstances, a fact finder could reasonably infer from a defendant's testimony that the opposite of what he said was true, the record in *Earle* presented nothing more than the usual conflict between witnesses. In *Earle*, three co-defendants each gave testimony that was not only inconsistent with the testimony of the police officers in the case, but that contradicted and undermined each other's testimony. *See id.* at 1267–68. Under those circumstances, we stated that "[t]he jurors, faced with the morass of contradictory testimony by [the defendants] and the police officers, were free to believe [the officers] and to disbelieve [the defendants] in finding the facts." *See id.* at 1268 (citing *Brenke v. United States*, 78 A.2d 677, 678 (D.C.1951) (stating that "where there is a direct conflict between the testimony of [a] defendant and that of a witness for the government, the trier of the facts has a right to accept the version of the government's witness")). Unlike in *Earle*, the trial court in this case heard testimony from only two witnesses: Downing and Hector himself. As previously discussed, Downing merely testified that Hector was present with his lawyer at the time Judge Blackburne–Rigsby granted her request for a CPO. Hector admitted

that he was present at the hearing, but testified that he never received a copy of the actual CPO and that he never understood Judge Blackburne–Rigsby's "no contact" order to mean anything more than he was to have no physical contact with Downing. Thus, the testimony of the two witnesses was not inherently contradictory such that a fact finder could, like in *Earle*, credit the testimony of one witness over another.

The argument the government makes in this case is more akin to the argument the government made in *United States v. Zeigler*, 301 U.S.App.D.C. 298, 994 F.2d 845 (1993). In *Zeigler*, the government failed to present any evidence contradicting appellant's testimony, yet argued that a powerful, negative inference could be drawn from the jury's rejection of appellant's testimony. It was that inference that the government argued constituted sufficient evidence to support appellant's conviction. The D.C. Circuit, however, rejected this argument, pointing out the absurdity of such a construction where the testimony is not "on its face, ... utterly inconsistent, incoherent, contradictory or implausible." *Zeigler, supra*, 301 U.S.App.D.C. at 302, 994 F.2d at 849.

> [A] decision along the lines the government proposes would mean that in cases in which defendants testify, the evidence invariably would be sufficient to sustain the conviction.... This sort of approach, beginning with the hypothesis that the [trier of fact] must have gotten things right, contradicts the reason why appellate courts review convictions for sufficiency of evidence—that [the trier of fact] sometimes get[s] things wrong.

---

6. It should be noted that the record does not indicate that any such inference was made by the trial court; however, to address the issue raised by the government we will assume that a negative inference was in fact made.

*Zeigler, supra,* 301 U.S.App.D.C. at 302, 994 F.2d at 849 (citing *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Like the defendant's testimony in *Zeigler,* Hector's testimony in this case about the events on the day of the hearing "was hardly implausible," nor was it inconsistent with other evidence. *Zeigler, supra,* 301 U.S.App.D.C. at 302, 994 F.2d at 849. We reject the notion that a fact finder can permissibly draw a negative inference from such testimony, even if discredited, sufficient by itself to sustain a conviction. *See Zeigler, supra,* 301 U.S.App.D.C. at 302, 994 F.2d at 849.

In *Stallings v. Tansy,* the Tenth Circuit, after reviewing case law from across the country, reached the same conclusion we reach here today. 28 F.3d 1018, 1024 (10th Cir.1994). In that case, the court noted that in some federal circuits, disbelief of a defendant's testimony can, in limited circumstances, give rise to a positive inference of guilt. *See id.* at 1023; *see, e.g., United States v. Eisen,* 974 F.2d 246, 259 (2d Cir.1992) (stating that a fact finder is "free to draw negative inferences from an untruthful witness's testimony as long as there is affirmative testimony to supplement or corroborate those negative inferences"); *United States v. Eley,* 723 F.2d 1522, 1525 (11th Cir.1984) (holding that defendant's "incredible explanation" of his possession of stolen goods was "so implausible that it [gave] rise to positive evidence in favor of the government"); *United States v. Restrepo–Granda,* 575 F.2d 524, 528 (5th Cir.1978) (stating that the appellant's "inherently improbable story" did not provide him with a "plausible explanation for his possession of the cocaine consistent with his innocence"); *United States v. Martinez,* 514 F.2d 334, 341 (9th Cir. 1975) (stating that "[d]isbelief of a defendant's own testimony may provide at least a partial basis for a [factfinder's] conclusion that the opposite of the testimony is the truth.... But such a disbelief can provide only partial support: there must also be 'other objective evidence on the record which buttresses the fact finder's drawing of the opposite inference,' ") (citing *United States v. Chase,* 503 F.2d 571, 573 n. 4 (9th Cir.1974) (internal citation omitted)).

As in *Stallings,* we need not decide whether to adopt any of the formulations outlined above because in this case, Hector's testimony at the hearing was neither implausible, incredible, nor inherently inconsistent, and the government provided no other evidence of guilt that may have corroborated an inference of willfulness. *See Stallings, supra,* 28 F.3d at 1024. Under these circumstances, "to hold that the Government can be credited with additional *affirmative* evidence of guilt based on *negative* credibility determinations made against the defendant would [impermissibly] relieve the Government of the burden of proving its case," *United States v. Burgos,* 94 F.3d 849, 892 (4th Cir.1996) (emphasis added), and that "contradicts the reason why appellate courts review convictions for sufficiency of the evidence—that [the trier of fact] sometimes get[s] things wrong." *Zeigler, supra,* 301 U.S.App.D.C. at 302, 994 F.2d at 849 (internal citation omitted). Therefore, Judge Milliken's disbelief of Hector's testimony could not fill the gap left by the government's total lack of relevant evidence as to Hector's alleged wilful violation of the CPO. *See Zeigler, supra,* 301 U.S.App.D.C. at 302, 994 F.2d at 849.

Hector's convictions must be reversed.

*So ordered.*