**Derrick THOMAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 06–CM–635.**

District of Columbia Court of Appeals.

Argued Oct. 10, 2007.

Decided Oct. 25, 2007.

■

---

Kyle A. McGonigal, appointed by the court, for appellant.

John V. Geise, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III and Mary B. McCord, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and THOMPSON, Associate Judges, and KING, Senior Judge.

REID, Associate Judge:

After a bench trial, the trial court found appellant, Derrick Thomas, guilty of violating a Temporary Protective Order ("TPO"), pursuant to D.C.Code §§ 16–1004(d), –1005(g) (2001). Mr. Thomas challenges his conviction arguing that the TPO was improperly extended and that there was insufficient evidence to support his conviction. We affirm.

## FACTUAL SUMMARY

On January 13, 2006, the Domestic Violence Unit of the Superior Court issued a TPO (No. 133–2006), which instructed Mr. Thomas that: (1) he was to "stay at least 100 feet away" from Jonquil Howard; and (2) he should not contact Ms. Howard "in any manner." The TPO was served on Mr. Thomas on January 19, 2006. On January 27, 2006, Mr. Thomas and Ms. Howard were present in the Superior Court for a hearing to determine whether a civil protection order ("CPO") should be entered. In conjunction with the hearing, the TPO was extended from January 27, 2006, through February 6, 2006.

Government testimony showed that after the CPO hearing, Ms. Yvette Missri, the Assistant Attorney General who represented Ms. Howard at the hearing, exited the courtroom to look for Ms. Howard. In the hallway outside the courtroom, while standing approximately six to eight feet away, Ms. Missri saw her client sitting on a chair that was against the wall. About a foot away from Ms. Howard was Mr. Thomas, hovering over her, speaking in a loud voice, and gesturing with his hands. Ms. Howard was silent and appeared frightened. On February 7, 2006, the United States Attorney for the District of Columbia filed a criminal information against Mr. Thomas, alleging his violation of the TPO. The sole government witness at Mr. Thomas' criminal trial was Ms. Missri, who recounted the event she witnessed. Mr. Thomas presented no evidence.

## ANALYSIS

Mr. Thomas contends that, on January 27, 2006, the Superior Court lacked the authority to extend the TPO another fourteen days; therefore, he could not be convicted of violating the TPO. He maintains that D.C.Code § 16–1004(d) only allows for issuance of a TPO for "not more than 14 days in duration" and does not provide any authority for an extension. The government argues that Mr. Thomas is barred from defending against the criminal charge of violating the TPO by questioning its validity. The government contends that he should have challenged the validity of the TPO in the division that issued it, rather than in the criminal division. The government also argues that the Family Division of the Superior Court has the power to extend the TPO.

■ "Compliance with court orders is required until they are reversed on appeal or are later modified." *Baker v. United States*, 891 A.2d 208, 212 (D.C.2006) (quoting *Kammerman v. Kammerman*, 543 A.2d 794, 798–99 (D.C.1988)). "Court orders must be respected and 'disobedience of them is contempt of its lawful authority, to be punished.'" *Baker, supra*, 891 A.2d at 212 (citations omitted). At the CPO hearing, the Superior Court extended the TPO from January 27, 2006 to February 6, 2006. Mr. Thomas did not challenge the extension at the hearing nor did he appeal it. Therefore, we need not decide whether the TPO was validly extended or whether the Superior Court possessed the authori-

ty to extend the TPO.[1] *See Id.* at 212 (where defendant's failure to challenge or appeal the validity of a no-contact order barred him from raising the issue on appeal); *In re (Simon) Banks,* 805 A.2d 990, 1001–02 (D.C.2002) (even if [the injunction against the attorney for unauthorized practice of law was] invalid, attorney was lawfully adjudged guilty of criminal contempt for failure to comply with it).

■ Mr. Thomas contends that the evidence was insufficient to establish that he "willfully" disobeyed the TPO, because there was no evidence about how he and Ms. Howard came to be within a foot of each other in the hall. He suggests that it was possible that Ms. Howard called him over and he had approached merely to tell her that he couldn't speak to her. Mr. Thomas also argues that it was impossible for him to obey the stay away provision since the parties had just exited the courtroom. Citing *In re Jones,* 898 A.2d 916 (D.C.2006), Mr. Thomas suggests that the court failed to provide sufficient notice or explain to him how to comply with the "stay away" provision while in the courtroom and the courthouse. The government asserts that Ms. Missri's testimony established that Mr. Thomas violated the TPO based on two theories: (1) he did not "stay at least 100 feet away" from Ms. Howard; (2) he made direct "contact" with Ms. Howard.

We conclude that the holding in *In re Jones* is inapposite to the facts and circumstances in this case. In *In re Jones, supra,* the defendant was found guilty of violating the "stay away" and "no contact" provisions of a CPO, while he was in the courtroom immediately after the CPO was

entered. *Id.* at 918. We reversed the conviction, holding that neither the terms of the CPO nor the trial court gave sufficient notice to the defendant on how to conduct himself in the courtroom, because literal compliance with the CPO [inside the courtroom] was impossible. *Id.* at 921. In the case *sub judice,* literal compliance, with the "stay away" and "no contact" provisions of the TPO, was possible in the hallway outside the courtroom.[2] As Judge Morrison noted, "[i]n the hallway there was no proceeding going on. There were no lawyers. There was nothing to compel them to be close to each other." Moreover, the TPO reflects that Mr. Thomas was advised in open court about the TPO.

■ "We may not reverse the trial court's findings of a [TPO] violation unless they are without evidentiary support or plainly wrong." *Davis v. United States,* 834 A.2d 861, 866 (D.C.2003) (quoting *Ba v. United States,* 809 A.2d 1178, 1182 (D.C. 2002)). "In reviewing criminal contempt cases ... we must view the evidence in the light most favorable to sustaining the judgment." *Id.* "Judicial review is deferential, giving 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Davis, supra,* 834 A.2d at 866. The evidence is insufficient to convict only "where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt...." *Gibson v. United States,* 792 A.2d 1059, 1065 (D.C.2002) (citations omitted). "[W]hether the acts in which the defendant was found to have

---

1. It should be noted, pursuant to Rule 7A(e) of the Rules Governing Proceedings in the Domestic Violence Unit of the Superior Court of the District of Columbia, "[t]he Court may reissue a temporary protection order for a

period no longer than fourteen-days (14) duration from the date it is reissued."

2. *See also Payne v. United States,* 932 A.2d 1095, 1100 n. 1 (D.C.2007).

engaged constitute [a TPO violation] is a question of law, and we review the trial court's resolution of that question *de novo.*" *Ba, supra,* 809 A.2d at 1182–83 (quoting *Fields v. United States,* 793 A.2d 1260, 1264 (D.C.2002) (citation and internal quotations omitted)).

"To establish the elements of a[TPO] violation, the government must present evidence proving beyond a reasonable doubt that defendant engaged in: (1) willful disobedience (2) of a protective court order." *Ba, supra,* 809 A.2d at 1183; *Davis, supra,* 834 A.2d at 866. "Since § 16–1005(g) is a general intent statute, '[p]roof of the intent element ... only requires proof that the appellant intended to commit the actions constituting violation of the court order.'" *Ba, supra,* 809 A.2d at 1183.

The evidence produced at trial was sufficient to support the trial court's findings. Ms. Missri testified that Mr. Thomas, while standing approximately one foot away from Ms. Howard, hovered over her and spoke to her in a loud voice. The government is entitled to the reasonable inference that hovering and talking loudly connotes willfulness, and that by engaging in this type of behavior, Mr. Thomas intended to commit acts constituting a violation of the CPO. In short, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the government, we are satisfied that there was sufficient evidence upon which a reasonable mind might find that Mr. Thomas willfully disobeyed the one-hundred (100) feet "stay away" and "no contact" provisions of the TPO.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*