**Dan HOOKS, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 08–CM–426.**

District of Columbia Court of Appeals.

Argued June 23, 2009.
Decided Aug. 13, 2009.

Enid Hinkes, appointed by the court, for appellant.

Shivaprasad Nagaraj, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time, and Roy W. McLeese III, Elizabeth Trosman, and Jin Y. Park, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ, FISHER, and BLACKBURNE–RIGSBY, Associate Judges.

FISHER, Associate Judge:

Appellant Dan Hooks, Jr. challenges his conviction for violating a Civil Protection Order (CPO), D.C.Code § 16–1005(g) (2001), asserting that the evidence was insufficient and that the trial court improperly excluded documents and restricted cross-examination. Agreeing that the government failed to prove that appellant acted willfully, we reverse his conviction and do not reach the allegations of trial error.

## I.

Michelle Alford–Gould was the only witness for the government. She and appellant had dated from 2000 through 2005, but appellant was incarcerated "twice throughout the relationship." Deterioration of their relationship led her to seek a CPO, and a default order was issued on October 24, 2006. Among other things, it required appellant to stay at least 100 feet away from Ms. Alford–Gould's person, home, and vehicle. She alleged that appellant violated that order by coming to the house on December 4, 2006, and slashing her tires. He was not arrested and charged until later.

Appellant denied that he had gone to Ms. Alford–Gould's house in December of 2006, and he denied slashing her tires. Although he did go to the house in early November, after he was released from prison, appellant testified that he did not know a CPO had been issued, and she never told him "you can't come here." Appellant claimed that he first learned that the CPO had been issued when he "was locked up on a possession charge" in early December. After he was arraigned on that charge, "they took me to another court, which was a civil court[,]" and the judge "said something about a civil case." In closing argument, defense counsel asserted that appellant "had no knowledge of the CPO.... He didn't know there was a stay-away...."

## II.

■ "To establish the elements of a CPO violation, the government must present evidence proving beyond a reasonable doubt that defendant engaged in: (1) willful disobedience (2) of a civil protection order." *Davis v. United States*, 834 A.2d 861, 866 (D.C.2003) (quoting *Ba v. United States*, 809 A.2d 1178, 1183 (D.C.2002) (internal quotation marks and brackets omitted)). "For all practical purposes, this is a criminal contempt case in which [Hooks] has been charged with intentionally violating a court order." *Davis*, 834 A.2d at 866.[1] "The offense requires both a contemptuous act and a wrongful state of mind." *Id.*

■ "Our standard of review of any criminal conviction for evidentiary insufficiency is a familiar one, and it applies with

---

1. D.C.Code § 16–1005 contains two subsections authorizing prosecution of an individual who violates a civil protection order. "Although subsection (g) does not use the word 'contempt,' subsection (f) does." *Davis v. United States*, 834 A.2d 861, 866 (D.C.2003).

"[T]he elements of a CPO violation are the same under the two subsections." *Id.; accord, Ba*, 809 A.2d at 1182 n. 6. Under subsection (f), failure to appear for a CPO hearing is also punishable as contempt.

equal force here." *Davis*, 834 A.2d at 866. This is a deferential standard, and "[w]e may not reverse the trial court's findings of a CPO violation unless they are without evidentiary support or plainly wrong." *Ba*, 809 A.2d at 1182 (citations and internal quotation marks omitted). Nevertheless, "appellate review of the sufficiency of the evidence is [not] toothless." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc). Here, as in previous cases, "we are constrained to conclude that even if the government showed that [Hooks] violated the CPO, it did not prove beyond a reasonable doubt that he did so willfully." *Davis*, 834 A.2d at 867; *see also Hector v. United States*, 883 A.2d 129 (D.C.2005).

■■■ To prove willfulness, the government must first show that the defendant had knowledge of the court order. "One cannot be contemptuous of a court order if he has no knowledge of it." *In re Thompson*, 419 A.2d 993, 996 (D.C.1980); *accord, Hector*, 883 A.2d at 132 ("Without [proof] that Hector was aware of the terms of the CPO, the government failed to establish that Hector willfully violated the CPO."). Often such knowledge is demonstrated by proof that the defendant was present in open court when the order was issued and explained. Here, however, the order was issued in appellant's absence.

The government made no effort to prove that appellant had been served with the CPO or otherwise had been notified of its prohibitions. The only relevant evidence that appears in the record was elicited on cross-examination of Ms. Alford–Gould and during appellant's testimony. The trial court made no findings of fact pertinent to this issue, focusing instead on whether the CPO had been validly issued in appellant's absence.[2] But it was not enough for the government to prove that the order was valid. In order to prove willfulness, it also had to establish that appellant knew the order had been issued and knew that it prohibited him from coming within 100 feet of the victim, her residence, and her automobile.

To defend its conviction, the government relies on a confusing sequence of questions and answers that began when Ms. Alford–Gould was asked "how Mr. Hooks was given notice of that CPO hearing [in October] ... and who gave it to him?" Ms. Alford–Gould responded, "Yes[,]" but "I don't have the paperwork in front of me." Following up, counsel inquired, "Do you know what person you talked to to make arrangements to have him served with the paperwork to know to come to court on the 24th of October?" The witness answered, "Several times when Mr. Hooks violated the order, one person that actually gave him paperwork was my sister, because she was present when he was banging on the door several times. When he got actually to the house, in the house, my mother was present, my sister was present." Eventually, defense counsel asked, "[D]id you make efforts to serve the CPO on him?" The witness replied, "The paperwork that was as far as how he was being served is in the courts. I don't have the paperwork in front of me to let you know exactly what date and time and who gave him papers, but Mr. Hooks was served."

Even viewed in the light most favorable to the government, this exchange is much too ambiguous to prove beyond a reason-

---

**2.** The court noted Judge Motley's finding "that there was proper service and notice on the defendant of the petition," but this refers to service of the petition for issuance of a CPO, not to service of the CPO itself. After describing the process by which Judge Motley issued the CPO on October 24, 2006, the court found "that after the issuance of the order, the Civil Protection Order[,] on December 4th 2006, the defendant was in violation of that order by being within 100 feet of [Ms. Alford–Gould]."

able doubt that appellant acted willfully. It is not clear that Ms. Alford–Gould was distinguishing in her mind between notice of the October 24th hearing and service of the CPO issued on that date. Her reference to "paperwork" was no more precise, and she did not know "who gave him papers" or when that might have occurred. "The evidence is insufficient if, in order to convict, the [finder of fact] is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Rivas,* 783 A.2d at 134. The fact that the trial court discredited appellant's testimony was not enough to fill the gap in the government's proof. *Hector,* 883 A.2d at 133–34.

The judgment of conviction is hereby

*Reversed.*