**In re Glenn Davis FERGUSON.**

No. 09–FM–1219.

District of Columbia Court of Appeals.

Submitted May 11, 2011.
Decided Feb. 23, 2012.
Amended Upon Rehearing Aug. 9, 2012.*

---

* After we issued our original opinion in this matter on February 23, 2012, the Attorney General of the District of Columbia filed a petition for rehearing or rehearing en banc, and the United States filed a memorandum in support of the petition. Upon consideration of the petition and supporting memorandum and appellant's response thereto, the Division has voted to grant rehearing and now issues this amended opinion.

Regina Michaels, Bethesda, appointed by the court, for appellant.

Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Solicitor General, and Sidney R. Bixler, Assistant Attorney General, for appellee.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and WAGNER, Senior Judge.

PER CURIAM:

After a bench trial, appellant Glenn Ferguson was found guilty of two counts of criminal contempt for violation of a civil protection order ("CPO"), in connection with telephone calls that he made to complainant Bonita Keeton on December 24, 2008, and January 1, 2009. On appeal, he argues that the evidence was insufficient to support his convictions. We affirm one of the convictions, but agree that the evidence was insufficient as to the other and reverse the conviction on that basis.

## I.

The record shows that in September 2008, Keeton petitioned for a CPO against appellant, her former boyfriend and father of her two-year-old daughter, Angel. On October 22, 2008, the trial court issued a CPO ordering, *inter alia,* that appellant not contact Keeton "except under the following conditions: Only regarding the child and announcement for pick up and return of the child" (for visitation). At trial on August 31, 2009, Keeton testified that, on December 24, 2008, she received a phone call from appellant in which he asked whether she was "going to be home for Christmas because he had a present that Angel had bought" for Keeton. Keeton testified:

> I told him that no, I wasn't going to be home and how did Angel get me a present when Angel don't have a job.... And he asked me was I going to be home and I told him, no, I wasn't going to be home. And so he said well, I'll just throw it in a box with everything else.

Keeton further testified that on January 1, 2009, appellant called her and said, "Happy New Year, or something." Keeton testified that there was "really no conversation because [she] told him, I'm not talking to you." She explained:

I didn't even want to listen to anything he had to say. My first response was, I'm not talking to you and you're not supposed to be calling me and I'm not talking to you. And that was it. He ... said something about—I don't, I don't remember what he said, but I know I was adamant about, I'm not talking to you, I'm not supposed to talk to you, and that was it. It was—wasn't a whole lot of conversation on that day.

Keeton stated that appellant "didn't say anything about Angel," but added that she "did not give [him] ... a[n] opportunity to state why he was calling."

At the close of the government's evidence, defense counsel made a motion for judgment of acquittal as to the contempt charge related to appellant's contact with Keeton on January 1, 2009 and a third contempt count relating to a contact with her on January 3, 2009. However, counsel "concede[d]" appellant's guilt as to the December 24, 2008 phone call.[1] Counsel twice repeated that concession (answering "Yes[,] Yes" when the court asked, "And so you concede on the December date, yes?" and explaining that he "didn't argue about the December 24th" since appellant "kept talking" during the call he placed to Keeton that day).[2] After the court denied the motion for judgment of acquittal, appellant took the stand and testified regarding his defense to the contempt count that was based on the contact he had with

Keeton on January 3, 2009 (as to which the court thereafter "decline[d] to find him guilty"). Appellant was asked no questions and gave no testimony about the December 24, 2008 and January 1, 2009 telephone calls. In the closing arguments that ensued, neither counsel argued with respect to the December 24 incident.

In finding appellant guilty of violating the CPO on December 24 and January 1, the court stated, "There is no dispute about December 24 and so the Government has met its burden [i]n that regard." The court stated that it was also "satisfied that the Government ha[d] met its burden" as to the January 1 telephone call, reasoning that January 1 was "not the day of [scheduled] visitation," and that appellant's rationale when he made that call was that "I know what the order says, but I'm calling you based upon these 15 odd years that we've been together, and I'm saying Happy New Year."

## II.

■ In CPO violation cases, "[w]e must view the evidence in the light most favorable to sustaining the judgment." *Ba v. United States,* 809 A.2d 1178, 1182–83 (D.C.2002) (citation and internal quotation marks omitted). "However, whether the acts in which the defendant was found to have engaged constitute [a CPO violation] ... is a question of law, and we review the trial court's resolution of that question *de novo.*" *Id.* (citations and internal quotation marks omitted). "[W]e have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a trier of fact behaving rationally could find it persuasive

---

1. Specifically, asked by the court whether he had "anything else to say about the other date [December 24, 2008]," counsel stated, "I'll concede that the day of—I try to be honest, Your Honor."

2. During the trial, appellant made no statements on the record regarding any of these concessions.

beyond a reasonable doubt." *Davis v. United States,* 834 A.2d 861, 866 (D.C. 2003) (internal brackets omitted).

■ "To establish the elements of a CPO violation, the government must present evidence proving beyond a reasonable doubt that defendant engaged in: (1) willful disobedience (2) of a civil protection order." *Hooks,* 977 A.2d at 939 (citing *Davis,* 834 A.2d at 866). "The offense requires both a contemptuous act and a wrongful state of mind." *Id.*

### III.

■ Appellant contends that notwithstanding defense counsel's concession that appellant's December 24 phone call to Keeton "was a violation of the CPO," "the trial court erred in finding [appellant] guilty, as the action did not violate the language of the CPO as written." We cannot agree. Even if we interpret the CPO to have permitted—as a contact "regarding the child"—a call from appellant to Keeton that was genuinely about "a present that Angel had bought" for Keeton,[3] there remains appellant's repeated question to Keeton about whether she was "going to be home" (what counsel recognized as appellant's having "kept talking"). We think the evidence presented was sufficient to permit the trial court to find that appellant's further question to Keeton was not genuinely "regarding the child," but instead represented an effort to have contact with Keeton outside the bounds permitted under the CPO.

In issuing our original opinion in this appeal, we nevertheless held, *sua sponte,*

that we could not uphold the conviction based on the December 24 phone call. We reasoned that the trial court had erred in relying on a concession by defense counsel that was tantamount to a guilty plea, without assuring that appellant understood the consequences of that concession. Upon consideration of the petition for rehearing and the supporting and opposing memoranda, we are persuaded that we should not have reversed the conviction on that basis where (1) appellant did not specifically raise the issue in his brief to us or in the trial court; (2) appellee did not have a full opportunity to brief the issue; and (3) authority exists to support a contrary argument. Accordingly, having concluded that the evidence presented by the government demonstrated a violation of the terms of the CPO and was sufficient to support the conviction, we now affirm appellant's conviction that was based on his December 24 call to Keeton.

### IV.

■ With regard to his contempt conviction based on the January 1 call, appellant argues that the government did not prove that he violated the CPO since the evidence was that Keeton "hung up the telephone . . . abruptly before finding out the reason for [appellant's] call, . . . since there was no evidence at trial as to the purpose of his call," and since the CPO allowed for some telephone calls. We agree that the evidence was insufficient to establish beyond a reasonable doubt that appellant willfully violated the terms of the CPO when he made the January 1 call.

---

3. We note that, in an effort to forestall potential future disputes about the scope of the permitted contacts with Keeton and to provide the court with "written document[ation] about what was said," the trial judge at sentencing changed the terms of the CPO prospectively. The court restricted appellant's phone contact with Keeton to "an emergency" that "pertain[s] to the child" and limited other contacts pertaining to the child to "text or e-mail" messages. In light of the parties' dispute about the interpretation of the CPO, *see note* 4 *infra,* we think the court acted wisely in making these changes.

■ As described above, the CPO expressly prohibited appellant from contacting Keeton except "regarding the child." [4] On the evidence presented, it is unclear for what purpose appellant called Keeton on January 1, and therefore unclear whether appellant contacted Keeton with "a wrongful state of mind" and in fact violated the terms of the CPO. Keeton testified that when she answered her telephone, appellant greeted her with "Happy New Year" or something to that effect, and Keeton immediately hung up the telephone after telling him not to call her. The trial court reasoned that, had he been calling for a legitimate purpose, appellant should have said, "I need to say something about the child[ ]," or something to that effect, before allowing Keeton to hang up the telephone. Keeton testified, however, that she "did not give Mr. Ferguson ... a[n] opportunity to state why he was calling." The evidence afforded the trial court no way of discerning, other than through speculation,

what appellant's intention was when he placed the January 1, 2009 call to Keeton. *See Hooks,* 977 A.2d at 941 ("The evidence is insufficient if, in order to convict, the finder of fact is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation."); *cf. Commonwealth v. Consoli,* 58 Mass.App.Ct. 734, 792 N.E.2d 1007, 1011 (2003), and cases cited therein (suggesting that if a greeting by a defendant to the beneficiary of a protective order is a routine civility that is "incidental" to the defendant's exercise of a right not prohibited by a protective order, the greeting would not violate the order). Even when we view the record in the light most favorable to the government, as we have done, there is a lack of evidence to show that Ferguson violated the CPO when he began his January 1 call to Keeton with, "Happy New Year," and (as far as the record reveals) said nothing more.[5] *Cf.*

---

**4.** The government urges us to interpret the CPO as permitting appellant to contact Keeton only for the purpose of "visitation rights" (i.e., in the language of the CPO, only for "announcement for pick up and return of the child"). However, the CPO states that appellant may contact Keeton "regarding the child *and* announcement for pick up and return of the child" (emphasis added), not just regarding "pick up and return of the child." The conjunctive "and" implies that there are two permitted topics of contact: (1) regarding the child and (2) regarding announcement for pick up and return of the child. As noted earlier, the trial court appeared to interpret the CPO in the same manner as we do, explaining to appellant that "unless you have something to say about Angel, about Angel's health, Angel's welfare, [or] specific issues of visitation, ... there is nothing else for you to exchange" with Keeton. Moreover, to the extent that the CPO is ambiguous, we must "construe ambiguities ... as redounding to the benefit of the person charged with contempt." *In re Jones,* 898 A.2d 916, 922 (D.C. 2006) (citations omitted). Even though, as the court found, January 1 was "not the day of [scheduled] visitation," we do not read the

CPO in effect on January 1, 2009, as prohibiting appellant from calling on other days about visitation or otherwise "regarding the child."

**5.** The government asserts that the evidence showed that appellant "continued to talk" after Keeton rebuffed his "Happy New Year" greeting. The government relies on the following portion of Keeton's direct testimony:

> I didn't even want to listen to anything he had to say. My first response was, I'm not talking to you and you're not supposed to be calling me and I'm not talking to you. And that was it. He ... said something about—I don't, I don't remember what he said, but I know I was adamant about, I'm not talking to you, I'm not supposed to talk to you, and that was it. It was—wasn't a whole lot of conversation on that day.

We do not read the foregoing testimony as indicating clearly that appellant "continued to talk," especially in light of Keeton's statement, during cross-examination, that she did not "give Mr. Ferguson, on January 1st, a[n] opportunity to state why he was calling." In addition, on re-direct examination, Keeton stated that she "just heard [appellant's] voice

*Hooks,* 977 A.2d at 940–41 ("Even viewed in the light most favorable to the government, this exchange is much too ambiguous to prove beyond a reasonable doubt that appellant acted willfully."). "To sustain a conviction on these facts, we would have to reach out to find justification for doing so. This is not our task, especially in a criminal case." *In re Jones,* 898 A.2d at 922 (citing *Vaas v. United States,* 852 A.2d 44, 48 (D.C.2004) (Schwelb, J., concurring)). For these reasons, we reverse the conviction that was based on appellant's January 1, 2009 call to Keeton.

To summarize, for the foregoing reasons, we affirm appellant's CPO-violation conviction that was based on his December 24, 2008 telephone call to Keeton, but reverse his conviction that was based on his January 1, 2009 telephone call to her.

*So ordered.*

WAGNER, Senior Judge, concurring in part and dissenting in part:

I join the majority in reversing appellant's conviction based upon his January 1st telephone call. However, the evidence was insufficient to prove beyond a reason-

able doubt that appellant willfully disobeyed the terms of the CPO on December 24th. At that time, the CPO permitted appellant to contact petitioner (1) regarding the child, and (2) for announcement for pick up and return of the child for visitation.[1] The evidence showed that on Christmas eve, appellant called petitioner, his two-year-old daughter's mother, and told her that he had a gift for her that the child had purchased and inquired whether she would be at home.[2] It cannot be found or reasonably inferred from this evidence that appellant's call to attempt to arrange for his daughter to give her mother a Christmas present is not related to the child. Under the circumstances described, appellant's contemporaneous inquiry about whether petitioner would be at home does not alter the nature of the call as one related to the child. According to the government, the trial court and the parties proceeded on the assumption "that the CPO prohibited all contact except calls relating to visitation." This misapprehension, no doubt, accounts for defense counsel's improvident concession of guilt and the trial court's finding of guilt based on the December 24th telephone call. In my view, the evidence was insufficient to support the conviction.[3] Therefore, I respect-

saying, Happy New Year, or something. And then I told him I wasn't talking to him." The testimony can reasonably be read (and we read it) as denoting that appellant said nothing more than "Happy New Year," or something to that effect, before she hung up the telephone.

1. See Majority Opinion, footnote 4.

2. In testimony, petitioner described this telephone call as follows:
    Just a brief moment while he said how Angel [their child] had bought a present for me and was I going to be home. And I said no, and I said, how did Angel get a present for me because Angel don't have a job. And I stated that no, I was not

going to be home, and that was the end of the conversation.
    The court questioned petitioner, and she responded as follows:
    The Court: On the December 24, all that Mr. Ferguson said is that he had a gift for you that Angel purchased?
    [Petitioner]: Yes.
    The Court: Did he say anything else about the children?
    [Petitioner]: No.

3. *See Hooks v. United States,* 977 A.2d 938, 939 (D.C.2009) (citing *Davis v. United States,* 834 A.2d 861, 866 (D.C.2003)) (setting forth elements of proof required for a contemptuous violation of a CPO).

fully dissent from that portion of the majority opinion that concludes otherwise.